1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ELIZABETH CASTRO, *individually, and*          No.  1:19-cv-00755-DAD-SKO
     *on behalf of similarly situated members of*
12   *the general public and other aggrieved*
     *employees pursuant to the California*
13   *Private Attorneys General Act,*                ORDER GRANTING PLAINTIFF'S MOTION
                                                     FOR CONDITIONAL CLASS
14                       Plaintiff,                  CERTIFICATION AND PRELIMINARY
                                                     APPROVAL OF THE PROPOSED CLASS
15         v.                                        AND COLLECTIVE ACTION SETTLEMENT

16   PARAGON INDUSTRIES, INC., *a*                   (Doc. No. 9.)
     *California Corporation d/b/a as*
17   BEDROSIANS,

18                       Defendant.

19

20                              **INTRODUCTION**

21         This matter came before the court on December 3, 2019, for hearing on plaintiff's motion

22   for preliminary approval of a class action and collective action settlement.  (Doc. Nos. 9, 12.)

23   Attorney Danielle Chang appeared telephonically on behalf of plaintiff, and attorney Mark

24   Kruthers appeared telephonically on behalf of defendant.  For the reasons set forth below, the

25   court will grant preliminary approval of the proposed settlement.

26                              **BACKGROUND**

27         Defendant Paragon Industries, Inc. is a "manufacturer, importer, and distributor of

28   ceramic and porcelain tiles, decorative and glass mosaics, and natural stone."  (Doc. No. 9 at 9.)

1    Plaintiff Elizabeth Castro was employed by defendant as an hourly, non-exempt employee

2    between September 2016 and June 2017.  (*Id.*)

3         Plaintiff originally filed this class and collective action complaint in Fresno County

4    Superior Court on May 14, 2018, alleging various wage-and-hour claims.  (Doc. No. 9 at 9.)

5    Defendant answered on June 22 and July 3, 2018, denying all of plaintiff's allegations and

6    maintaining that it has complied with all relevant California and federal laws.  (*Id.* at 9.)  Between

7    June 29 and September 6, 2018, plaintiff conducted discovery by propounding interrogatories,

8    requesting the production of various documents, and deposing defendant's Person Most

9    Knowledgeable witness.  (*Id.* at 10.)  The parties then entered into private mediation before the

10   Honorable Steven M. Vartabedian (Ret.) on February 18, 2019.  (*Id.* at 10.)

11        With the stipulation of the parties, plaintiff filed a First Amended Complaint ("FAC") in

12   Fresno County Superior Court.  (*Id.*)  That FAC alleges violations of the California Labor Code,

13   California Business and Professions Code, and federal Fair Labor Standards Act ("FLSA"),

14   which plaintiff claims are also violations of California's Unfair Competition Law and give rise to

15   penalties under California's Private Attorneys General Act ("PAGA").  (*Id.* at 9–10; Doc. No. 1,

16   Ex. A, First Am. Compl.)  Defendant then removed the case to this federal court on May 29,

17   2019.  (Doc. No. 1.)

18        On October 21, 2019, plaintiff filed the present motion for conditional certification and

19   preliminary approval of the class and collective action settlement.  (Doc. No. 9).  After the

20   hearing on the motion, the court identified several issues of concern regarding the settlement and

21   directed the parties to submit responsive supplemental briefing, which plaintiff did on December

22   20, 2019.  (Doc. Nos. 13, 14.)  After further reviewing the settlement, the court requested

23   additional supplemental documentation on April 8, 2020, which plaintiff provided on April 15,

24   2020.  (Doc. Nos. 17, 18.)

25                              **THE PROPOSED SETTLEMENT**

26   **A.    The Class**

27        For settlement purposes, the parties request certification of the following class (the

28   "Class") of an estimated 1,447 individuals (the "Class Members"):

> With respect to all Released Class Claims, all individuals who are current or former hourly, non-exempt employees of Defendant in the State of California during the period from May 14, 2014 through the date the Court grants preliminary approval of the Settlement ("Settled Period" or "Class Period").

(Doc. No. 9 at 10–11; Doc. No. 10, Ex. 1, Settlement Agreement at ¶¶ 6–7.)

**B.      The FLSA Collective**

For settlement purposes, the parties request approval of the following collective (the "FLSA Collective"):

> The FLSA Collective will consist of all FLSA Members who cash, deposit, or otherwise negotiate their check for payment of their share of the Net FLSA Settlement Fund (as defined below) and who will be bound by the settlement and resolution of the Released FLSA Claims ("FLSA Settlement"). FLSA Members are, with respect to all Released FLSA Claims, all individuals who are current or former hourly, non-exempt employees of Defendant in the State of California during the Settled Period.

(Doc. No. 9 at 11; Settlement Agreement at ¶ 18.)

**C.      The Settlement Period**

For settlement purposes, the parties have defined the "Class Period" as "the period from May 14, 2014 through the date the Court grants preliminary approval of the Settlement. This definition applies to both the Class Claims and FLSA Claims." (Settlement Agreement at ¶ 7.)

**D.      The Release of Claims**

The settlement agreement defines Released Parties as:

> Defendant and any of its former and present parents, subsidiaries, affiliates, divisions, corporations in common control, predecessors, successors, joint ventures and assigns, as well as all past and present officers, directors, employees, partners, members, principals, shareholders, agents, attorneys, insurers, coinsurers, reinsurers, and any other successors, assigns, or personal or legal representatives, if any.

(Settlement Agreement at ¶ 34.)

The Released Class Claims are defined as:

> All wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, against any of the Released Parties, that were plead in the First Amended Complaint or that could have been plead based on the factual allegations in the First Amended Complaint, arising during the period from May 14, 2014 through the date the Court grants preliminary approval of the Settlement,

3

> including, without limitation, any statutory, constitutional, contractual or common law claims for wages (including minimum wage, overtime, and premium wages, and for any failure to pay overtime based on the regular rate of pay), damages, business expenses, or penalties (including waiting time penalties), liquidated damages, punitive damages, interest, restitution, equitable relief, or any other relief, based on any and all applicable statutes (other than the Fair Labor Standards Act, including without limitation the California Labor Code, the California Industrial Welfare Commission wage orders, Labor Code Private Attorneys General Act of 2004 (Cal. Lab. Code §§ 2698, *et seq.*) ("PAGA"), California Business and Professions Code § 17200, *et seq*[.], or other law[)], including, but not limited to, claims for failure to pay overtime wages, claims for meal and rest period violations and/or associated premium pay, claims for failure to pay minimum wages, claims for failure to timely pay wages upon termination, claims for failure to timely pay wages during employment, claims for failure to pay wages, claims for failure to provide accurate or otherwise proper itemized wage statements, claims for failure to keep complete and accurate payroll records, claims for failure to reimburse necessary business-related expenses and costs, claims under PAGA arising out of the aforementioned claims, claims under California Business & Professions Code § 17200 *et seq.* arising out of the aforementioned claims, and all other claims for penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or additional damages arising out of the aforementioned claims.

(Doc. No. 9 at 14–15; Settlement Agreement at ¶ II.32.)

The amended Released FLSA Claims are defined as:

> [A]ny and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, against any of the Released Parties, under the Fair Labor Standards Act, arising out of or related to any and all factual allegations in the First Amended Complaint , arising during the period from May 14, 2014 though the Effective Date of this Agreement, which are or could be raised in the Action.

 (Doc. No. 14-1, Exs. 2, 3, Amendment No. 1 to Class Action and Collective Action Settlement and Release Agreement at 28–30.)

**E.      Summary of the Settlement Terms**

Under the proposed settlement, defendants will pay a total of $3,750,000.00 (the "Gross Settlement Fund"), allocated as follows:  1) up to $1,312,500.00 for attorneys' fees and up to $55,000.00 for litigation costs; 2) up to $15,000.00 as an incentive award for plaintiff;

/////

3) $75,000.00 in civil PAGA penalties;[1] 4) an estimated $15,000.00 for settlement administration costs; and 5) approximately $95,000.00 in employer payroll taxes and contributions.[2]  (Doc. Nos. 9 at 11–12; 14 at 19–20.)

Assuming these allocations are awarded in full, approximately $2,200,000 (the "Net Settlement Fund"), will be available for distribution to Class Members who do not submit a timely and valid request for exclusion ("Participating Class Members") and FLSA Members who timely and validly opt-in to the FLSA Collective ("Participating FLSA Class Members").[3]  (Doc. No. 9 at 11–12.)  From the Net Settlement Fund, 80% will be allocated to the Class Settlement ("Net Class Settlement"), and 20%, to the FLSA Settlement ("Net FLSA Settlement Fund").  (*Id.*)  The Net Class and Net FLSA Settlement Funds will be distributed to their respective members on a *pro rata* basis based on the number of weeks worked ("Workweeks") by each member.  (*Id.* at 12.)  Plaintiff estimates that Participating Class Members will receive between $505.74 and $4,045.96 in Non-FLSA Payments, and Participating FLSA-Members will receive between $126.44 and $1,011.49 in FLSA Payments, depending on the number of Workweeks of each member.  (*Id.* at 13.)  The entire Net Settlement Fund will be distributed to the Participating Class and FLSA Class Members with no reversion to defendant.[4]  (*Id.*)

/////

/////

/////

---

[1]  Pursuant to the PAGA, 75% of the civil PAGA penalties, or $56,250.00, will go to the California Labor and Workforce Development Agency ("LWDA"), and 25%, or $18,750, will be allocated to the Net Class Settlement Fund.  (Doc. No. 9 at 11.)  *See* Cal. Lab. Code § 2699(i).

[2]  These employer taxes will be paid from the Gross Settlement Fund; payouts to Participating Class and FLSA Class Members from the Net Settlement Fund will only be reduced by the employee's share of payroll taxes and withholdings.  (Doc. No. 9 at 13.)

[3]  FLSA Members need only cash their FLSA Payment Check to opt-in to the FLSA Settlement. (Doc. No. 9-2, Ex. B, Notice of FLSA Settlement at 19–20.)

[4]  Checks that are not cashed before their expiration will be cancelled with the funds to be transmitted to California Rural Legal Assistance, Inc., a non-profit organization.  (Doc. No. 9 at 30.)

**LEGAL STANDARDS**

**A.     Rule 23 Settlements**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The following procedures apply to the court's review of the proposed settlement:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> . . .
>
> Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks and citations omitted).  To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a fairness hearing and a determination that the settlement is fair, reasonable, and adequate."  *Bluetooth*, 654 F.3d at 946.  But when parties seek approval of a settlement agreement negotiated before formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement."  *Id.*  In such circumstances, "settlement approval requires a higher standard of fairness" and a "more exacting review" so as "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (internal quotation marks and citations omitted).  In addition, when parties seek class certification only for purposes of settlement, Rule 23 "demand[s] undiluted, even heightened, attention" to the certification requirements.  *Amchem Prods., Inc. v. Windsor*,

1   521 U.S. 591, 620 (1997).  The district court must examine the propriety of certification under

2   Rule 23 both at this preliminary stage and at a later fairness hearing.  *See, e.g.*, *Ogbuehi v.*

3   *Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. Oct. 2, 2014).

4           Review of a proposed class action settlement ordinarily proceeds in three stages.  *See*

5   *Manual for Complex Litigation* (4th) § 21.632.  First, the court conducts a preliminary fairness

6   evaluation and, if applicable, considers class certification.  *Id.* (noting that if the parties move for

7   both class certification and preliminary approval, the certification hearing and preliminary

8   fairness evaluation can usually be combined).  Second, if the court makes a preliminary

9   determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties

10   are directed to prepare and issue the notice of certification and proposed settlement to the class

11   members.  *Id.*  Third, the court holds a final fairness hearing to determine whether to approve the

12   settlement.  *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1267

13   (9th Cir. 2010).

14           Though Rule 23 does not explicitly provide for such a procedure, federal courts generally

15   grant preliminary approval if "the proposed settlement appears to be the product of serious,

16   informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

17   preferential treatment to class representatives or segments of the class, and falls within the range

18   of possible approval."  *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL

19   558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp.

20   2d 1078, 1079 (N.D. Cal. 2007)); *see also Newberg on Class Actions* § 13:13 (5th ed. 2011).

21   While it is not a court's province to "reach any ultimate conclusions on the contested issues of

22   fact and law which underlie the merits of the dispute," a court should weigh, among other factors,

23   the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further

24   litigation; the extent of discovery completed; and the value of the settlement offer.  *Rodriguez v.*

25   *W. Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009) (quoting *Officers for Justice v. Civil Serv.*

26   *Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

27   /////

28   /////

1  **B.     PAGA Settlements**

2        Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor

3  code violations on behalf of herself and other current or former employees.  Cal. Lab. Code §

4  2699(a).[5]  A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law

5  enforcement agencies."  *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).  Accordingly, a

6  judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who

7  would be bound by a judgment in an action brought by the government." *Id.*; *see also Iskanian v.*

8  *CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 381 (2014) ("When a government agency is authorized

9  to bring an action on behalf of an individual or in the public interest, and a private person lacks an

10  independent legal right to bring the action, a person who is not a party but who is represented by

11  the agency is bound by the judgment as though the person were a party.").

12        The PAGA statute imposes a number of limits on litigants.  First, because a PAGA action

13  functions as a "substitute" for an action brought by the state government, a plaintiff suing under

14  PAGA is limited to recovery of civil penalties only, rather than damages or unpaid wages

15  available privately through direct or class action claims.  *Iskanian*, 59 Cal. 4th at 381; *ZB, N.A. v.*

16  *Superior Court*, 8 Cal. 5th 175 (2019).  Second, to bring an action under PAGA, an aggrieved

17  employee must first provide written notice to the LWDA as well as to the employer.  Cal. Lab.

18  Code § 2699.3(a)(1).  Third, any civil penalties recovered must be divided 75% with the LWDA

19  and 25% with the aggrieved employees.  *Id.* at § 2699(i).  Finally, the proposed settlement must

20  be submitted to the LWDA and a trial court must "review and approve" any settlement of PAGA

21  claims.  *Id.* at § 2699(l)(2).  Although there is no binding authority setting forth the proper

22  standard of review for PAGA settlements, courts, in the class action context where PAGA claims

23  often appear, must independently determine that a proposed settlement agreement is

24  "fundamentally fair, adequate and reasonable" before granting approval.  *See In re Heritage Bond*

25  *Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).  The determination of fairness, reasonableness, and

26  ――――――――――――――

27  [5]  An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  Cal. Lab. Code §
2699(c).

28

1   adequacy may involve a balancing of several factors including but not limited to the following:

2   the strength of plaintiffs' claims; the risk, expense, complexity, and likely duration of further

3   litigation; the amount offered in settlement; the extent of discovery completed, and the stage of

4   the proceedings; and the experience and views of counsel. *Officers for Justice*, 688 F.2d at 625.

5         The LWDA has also provided some guidance regarding court approval of PAGA

6   settlements. In a case where both class action and PAGA claims were covered by a proposed

7   settlement, the LWDA stressed that

8           when a PAGA claim is settled, the relief provided for under the
        PAGA [must] be genuine and meaningful, consistent with the

9           underlying purpose of the statute to benefit the public and, in the
        context of a class action, the court [must] evaluate whether the

10          settlement meets the standards of being "fundamentally fair,
        reasonable, and adequate" with reference to the public policies

11          underlying the PAGA.

12  California Labor and Workforce Development Agency's Comments on Proposed PAGA

13  Settlement ("LWDA Letter"), *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D.

14  Cal. Jul. 29, 2016) (Doc. No. 736 at 2–3);[6] *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110,

15  1133 (N.D. Cal. 2016) (citing the LWDA Letter with approval).

16        Recognizing the distinct issues presented by class actions, this court is persuaded by the

17  LWDA's reasoning in *O'Connor* and therefore adopts its proposed standard in evaluating the

18  PAGA portion of the settlement now before the court. *See, e.g.*, *Tenorio v. Gallardo*, No. 1:1-cv-

19  00283-DAD-JLT, 2019 WL 4747949, at *3 (E.D. Cal. Sept. 30, 2019); *Patel v. Nike Retail*

20  *Servs., Inc.*, No. 14-cv-04781-RS, 2019 WL 2029061, at *2 (N.D. Cal. May 8, 2019).

21  Accordingly, the court will approve a settlement of PAGA claims upon a showing that the

22  settlement terms 1) meet the statutory requirements set forth by PAGA, and 2) are fundamentally

23  fair, reasonable, and adequate in view of PAGA's public policy goals.

24  /////

25  /////

26

27    [6]  In the LWDA Letter, the LWDA also stated that it "is not aware of any existing case law

28  establishing a specific benchmark for PAGA settlements, either on their own terms or in relation
to the recovery on other claims in the action."

1    **C.    FLSA Settlements**

2        The FLSA permits employees to file civil actions against employers who abridge the

3    FLSA's guarantees.  29 U.S.C. § 216(b); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S.

4    66, 69 (2013) ("The FLSA establishes federal minimum-wage, maximum-hour, and overtime

5    guarantees that cannot be modified by contract.").  Employees may bring collective actions under

6    the FLSA, representing all "similarly situated" employees, but "each employee [must] opt-in to

7    the suit by filing a consent to sue with the district court."  *Does I thru XXIII v. Advanced Textile*

8    *Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000).  Because an employee cannot waive claims under the

9    FLSA, the claims may not be settled without court approval or Department of Labor supervision.

10   *Beidleman v. City of Modesto*, No. 1:16-cv-01100-DAD-SKO, 2018 WL 1305713, at *1 (E.D.

11   Cal. Mar. 13, 2018) (citing *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)).

12   The decision to certify an FLSA collective action is within the discretion of the district court.  *See*

13   *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006).

14       Although the Ninth Circuit has not established criteria to evaluate FLSA settlements,

15   district courts in this circuit routinely apply the standard employed in the Eleventh Circuit, which

16   examines whether a settlement is a fair and reasonable resolution of a bona fide dispute.  *See, e.g.*,

17   *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (citing

18   *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)); *Nen Thio v.*

19   *Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (same).  "A bona fide dispute exists

20   when there are legitimate questions about the existence and extent of defendant's FLSA liability."

21   *Kerzich v. Cty. of Tuolumne*, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018) (citation omitted).  A

22   court will not approve a settlement when there is certainty that the FLSA entitles plaintiffs to the

23   compensation they seek because doing so would shield employers from the full cost of complying

24   with the statute.  *Id.*

25       If a bona fide dispute between the parties exists, "[c]ourts often apply the Rule 23 factors

26   in evaluating the fairness of an FLSA settlement, while recognizing that some do not apply

27   because of the inherent differences between class actions and FLSA actions."  *Khanna v. Inter-*

28   /////

10

1  *Con Sec. Sys., Inc.*, No. 2:09-cv-02214-KJM-EFB, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22,

2  2013) (internal quotation marks and citations omitted).  The factors include

3  > the strength of the plaintiffs' case; the risk, expense, complexity, and
4  > likely duration of further litigation; the risk of maintaining class
   > action status throughout the trial; the amount offered in settlement;
5  > the extent of discovery completed and the stage of the proceedings;
   > the experience and views of counsel; the presence of a governmental
6  > participant; and the reaction of the class members to the proposed
   > settlement.

7  *Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-cv-2214-KJM-EFB, 2014 WL 1379861, at *6 (E.D.

8  Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015) (quoting *Hanlon*

9  *v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*

10  *Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

11    District courts in this circuit have also taken note of the "unique importance of the

12  substantive labor rights involved" in settling FLSA actions and adopted a "totality of

13  circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173.

14  Under this approach, a "district court must ultimately be satisfied that the settlement's overall

15  effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.*  In connection with this

16  approach, the district court's "obligation is not to act as caretaker but as gatekeeper, so that FLSA

17  settlements do not undermine the Act's purposes." *Kerzich*, 335 F. Supp. 3d at 1185 (citation

18  omitted).  Thus, only settlements that reflect a fair and reasonable compromise of issues actually

19  in dispute may be approved by the court.  *Id.* (citation omitted).

20            **LEGAL ANALYSIS**

21  **A.**  **Preliminary Class Certification**

22    The class action is a procedural mechanism whereby the "usual rule that litigation be

23  conducted by and on behalf of the named parties only" is swept aside so that multiple parties—

24  unwieldy in number but possessing similar or identical claims—may pursue common redress in

25  an efficient and economical manner.  *Comcast v. Behrend*, 569 U.S. 27, 33 (2013) (citation

26  omitted).  Here, the parties seek preliminary certification of the proposed class under Federal

27  Rule of Civil Procedure 23, which controls class certification and imposes a two-step process in

28  deciding whether a class may be certified.

First, Rule 23(a) requires the moving party to demonstrate the existence of four prerequisites:  1) numerosity, 2) commonality, 3) typicality, and 4) adequacy.  *See Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 730 (9th Cir. 2007).  If, and only if, a putative class satisfies these four requirements may it then proceed to show it also satisfies the requirements of Rule 23(b).  The party seeking class certification bears the burden of establishing conformity with these two rules and must do so by producing facts "affirmatively demonstrat[ing]" that certification is warranted.  *Comcast*, 569 U.S. at 33.  Only after conducting a "rigorous analysis" of these facts and determining they show "actual, [and] not presumed, conformance" with Rule 23(a) and (b), may a district court certify a class.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citation omitted); *see also Patel v. Nike Retail Servs., Inc.*, Case No. 14-cv-4781-RS, 2016 WL 1241777, at *3 (N.D. Cal. Mar. 29, 2016) ("This 'rigorous' analysis applies both to Rule 23(a) and Rule 23(b).").  If a court decides to certify a class, it must define the class claims and issues and appoint class counsel.  Fed. R. Civ. P. 23(c)(1), (g).

### 1.   Rule 23(a) Requirements

#### a.   *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  Courts have found the requirement satisfied when the class comprises as few as thirty-nine members or where joining all class members would serve only to impose financial burdens and clog the court's docket.  *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citation omitted) (discussing Ninth Circuit thresholds for numerosity and listing cases).  Here, plaintiffs estimate that there are approximately 1,447 members in the settlement class.  (Doc. No. 9 at 24.)  This showing with respect to numerosity is adequate to meet the requirements of Rule 23(a)(1).

/////

/////

/////

1

b.      *Commonality*

2      Rule 23(a) also requires "questions of law or fact common to the class."  Fed. R. Civ. P.

3   23(a)(2).  To satisfy the commonality requirement, the class representatives must demonstrate

4   that common points of facts and law will drive or resolve the litigation.  *See Wal-Mart Stores,*

5   *Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[C]ommonality requires that the class members' claims

6   depend upon a common contention such that determination of its truth or falsity will resolve an

7   issue that is central to the validity of each claim in one stroke," and the "plaintiff must

8   demonstrate the capacity of classwide proceedings to generate common answers to common

9   questions of law or fact that are apt to drive the resolution of the litigation."  *Mazza v. Am. Honda*

10   *Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350).  For example,

11   "[c]ommonality is generally satisfied where the lawsuit challenges a system-wide practice or

12   policy that affects all of the putative class members."  *Benitez v. W. Milling, LLC*, No. 1:18-cv-

13   01484-SKO, 2020 WL 309200, at *5 (E.D. Cal. Jan. 21, 2020) (internal quotation marks and

14   citations omitted).

15      The rule does not require all questions of law or fact to be common to every single class

16   member and "[d]issimilarities among class members do not [necessarily] impede the generation

17   of common answers to those questions[.]"  *Parsons v. Ryan*, 754 F.3d 657, 684 (9th Cir. 2014);

18   *see also Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he

19   existence of shared legal issues with divergent factual predicates").  However, the raising of

20   merely any common question does not suffice.  *See Wal-Mart*, 564 U.S. at 349 ("Any

21   competently crafted class complaint literally raises common 'questions.'") (quoting Richard A.

22   Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 131–32

23   (2009)).

24      Here, plaintiff argues that Class Members are all seeking "remedies under California's

25   wage-and-hour laws for violations arising from common, uniform, and systematic practices which

26   applied to all Class Members during the Settled Period."  (Doc. No. 9 at 24.)  Specifically,

27   plaintiff contends that

28   /////

13

Defendant's uniform policies, practices, and procedures required putative class members to perform work during meal and rest periods and before clocking-in and after clocking-out[,] . . . that she and Class Members and FLSA Members were required to work off-the-clock to provide customer service, respond to work-related inquiries, secure personal belongings, and complete their assigned workloads[,] . . . that meal and rest periods were often missed, interrupted by work-related inquiries and to perform job duties[,] . . . that Defendant intentionally and willfully failed to pay Plaintiff and other Class Members all wages due to them while they were employed by Defendant, within the time period permissible under California law, and upon termination, within the time period permissible under California law, thereby triggering waiting-time penalties under California Labor Code section 203[,] . . . that, based on the violations described herein, the wage statements provided by Defendant and the payroll records kept by Defendant were inaccurate[,] . . . [and] that Defendant failed to reimburse Plaintiff and the other Class Members for necessary business expenses, including but not limited to, the costs associated with purchasing clothing to comply with Defendant's dress code policy and office supplies.

(Doc. No. 10, Aiwazian Decl. at ¶ 25; *see also* Doc. No. 9-1, Castro Decl. at ¶¶ 3–6.) According to plaintiff, she personally experienced and has knowledge of these practices because

[d]uring [her] employment at Paragon, [she] learned Paragon's policies, practices, and procedures, including and not limited to, its policies, practices, and procedures regarding timekeeping, compensation, overtime, meal and rest breaks, and business expenses. [She] worked closely with other employees at Paragon, and it was [her] understanding, based on what [she] was told and what [she] experienced, that the policies, procedures, and practices were the same at all of Paragon's locations in California and applied to all of its non-exempt employees in California.

(Castro Decl. at ¶ 3.)

Because the above allegations "would form the basis of each [] plaintiff's claims," the court finds that commonality is satisfied here. *See Bykov v. DC Transportation Servs.*, Inc., No. 2:18-cv-1691-DB, 2019 WL 1430984, at *3 (E.D. Cal. Mar. 29, 2019) (citation omitted).

c.    *Typicality*

"The typicality requirement looks to whether the claims of the class representatives are typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citations and internal quotation marks omitted); Fed. R. Civ. P. 23(a)(3). While representative claims must be

14

1  "reasonably co-extensive with those of absent class members," they "need not be substantially

2  identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

3  (9th Cir. 1992).

4       Here, plaintiff states that she was:  1) required to perform work off-the-clock before and

5  after her shift; 2) discouraged from recording overtime work; 3) not compensated for her off-the-

6  clock time; 4) unable to take timely, uninterrupted, 30-minute meal breaks and 10-minute rest

7  periods because she was required to respond to work-related inquiries; 4) not paid premium

8  payments for non-compliant meal or rest breaks; and 5) incurred business-related expenses, such

9  as for a cell phone, office supplies, and dress-code compliant clothes, for which she was not

10  reimbursed.  (Castro Decl. at ¶¶ 3–6.)

11       Because the proposed class consists of hourly, non-exempt employees who, like plaintiff,

12  were employed by defendant in California, worked overtime, and were allegedly subjected to the

13  common, uniform, and systematic set of practices described above (*see* Aiwazian Decl. at ¶ 25;

14  Castro Decl. at ¶¶ 3–6), the court finds that plaintiff Castro's claims are "reasonably co-extensive

15  with those of absent class members." *Hanlon*, 150 F.3d at 1020.  Typicality is therefore satisfied

16  here.

17         a.  *Adequacy of Representation*

18       The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and

19  adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Resolution of this issue

20  requires the court to address the following questions:  "(a) do the named plaintiffs and their

21  counsel have any conflicts of interest with other class members and (b) will the named plaintiffs

22  and their counsel prosecute the action vigorously on behalf of the class?"  *Sali v. Corona Reg'l*

23  *Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1651 (2019) (citation

24  omitted); *see also Pierce v. Cty. of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).  "Adequacy of

25  representation also depends on the qualifications of counsel."  *Sali*, 909 F.3d at 1007 (citation

26  omitted).

27       Here, plaintiff has demonstrated a serious interest in and commitment to her role as class

28  representative by, among other things, independently learning about wage-and-hour lawsuits and

15

researching leading class action and employment law firms, meeting with her attorneys, gathering documents and answering questions about the litigation, and evaluating the proposed settlement. (Castro Decl. at ¶¶ 7–11.)  She also avers that her interests are aligned with the other Class Members, that she is not related to anyone associated with her lawyers, and that she has not entered into any undisclosed agreements or received any undisclosed compensation.  (Doc. No. 9 at 25; Castro Decl. at ¶¶ 12–13.)

Plaintiff's counsel also submitted a declaration to establish their adequacy as class counsel.  Attorney Edwin Aiwazian has approximately 16 years of experience as a civil litigator, focusing on consumer and employment class actions, and his firm, Lawyers for Justice, PC, has litigated dozens of cases in federal and state courts in California as class counsel and recovered millions of dollars on behalf of their clients.  (Aiwazian Decl. at ¶¶ 2–7.)  He also avers that he and his firm have no conflicts of interest in this case with "the *cy pres* recipient California Rural Legal Assistance, Inc., Plaintiff Elizabeth Castro, Class Members, Defendant Paragon Industries, Inc. dba Bedrosians, or Defendant's counsel Dowling Aaron Incorporated."  (Second Suppl. Aiwazian Decl. at ¶ 3.)  As such, the court finds that plaintiff and her counsel satisfy the adequacy of representation requirement.

2.      Rule 23(b)(3) Requirements

The parties seek class certification under Rule 23(b)(3), which requires that:  1) the questions of law or fact common to class members predominate over any questions affecting only individual members; and 2) a class action be superior to other available methods for fairly and efficiently adjudicating the controversy.  *See Amchem*, 521 U.S. at 615; *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc).  The test of Rule 23(b)(3) is "far more demanding" than that of Rule 23(a).  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

a.      *Predominance*

First, common questions must "predominate" over any individual questions.  While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is higher at this stage of analysis.  *Dukes*, 564 U.S. at 359.  While Rule 23(a)(2) can be satisfied by even a single

16

question, Rule 23(b)(3) requires convincing proof that common questions "predominate."

*Amchem*, 521 U.S. at 623–24.  "When common questions present a significant aspect of the case

and can be resolved for all members of the class in a single adjudication, there is clear

justification for handling the dispute on a representative rather than on an individual basis."

*Hanlon*, 150 F.3d at 1022.

As discussed above, plaintiff challenges defendant's "uniform policies, practices, and

procedures," which have allegedly deprived Class Members of statutorily required meal and rest

periods and compensation for hours worked.  (Doc. No. 9 at 26; Castro Decl. at ¶¶ 3–6; Aiwazian

Decl. at ¶ 25.)  Class actions in which a defendant's uniform policies are challenged generally

satisfy the predominance requirement of Rule 23(b)(3).  *See, e.g.*, *Palacios v. Penny Newman

Grain, Inc.*, No. 1:14-cv-01804-KJM-SAB, 2015 WL 4078135, at *5–6 (E.D. Cal. July 6, 2015);

*Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. 10-cv-03873-JLS-RZ, 2011

WL 320998, at *7 (C.D. Cal. Jan. 27, 2011).  The court therefore concludes that the

predominance requirement has been met in this case.

> b. *Superiority*

Rule 23(b)(3) also requires a court to find that "a class action is superior to other available

methods for the fair adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  To resolve the

Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing

separate actions individually, any litigation already in progress involving the same controversy,

the desirability of concentrating in one forum, and potential difficulties in managing the class

action—although the last two considerations are not relevant in the settlement context."  *See

Palacios*, 2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-cv-00616-AWI-

SKO, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

Here, plaintiff asserts that the superiority requirement is satisfied because the alternative

method of resolution—individual suits by nearly 1,500 Class Members who are hourly workers

with relatively modest claims and limited resources —would be prohibitively expensive and

uneconomical for potential plaintiffs.  (Doc. No. 9 at 26.)  In addition, litigating such claims

/////

1  individually in the highly impacted U.S. District Court for the Eastern District of California[7]

2  "would be inefficient and would unnecessarily burden the judicial system" and could result in

3  inconsistent outcomes.  *Cortez v. Vieira Custom Chopping, Inc.*, No. 1:17-cv-01647-DAD-SKO,

4  2019 WL 4596782, at *6 (E.D. Cal. Sept. 23, 2019).

5         Given that "[a] common nucleus of facts and potential legal remedies" predominate, the

6  court finds that these questions can be resolved for all members more efficiently and

7  expeditiously in a single action.  *Hanlon*, 150 F.3d at 1022.  Therefore, the court is satisfied that

8  the superiority requirement has been met here.

9  **B.      Conditional Certification of FLSA Collective Action**

10        Plaintiffs seeking conditional certification of a collective action under the FLSA have the

11  burden to show that they are "similarly situated" to other employee class members.  *Nen Thio*, 14

12  F. Supp. 3d at 1340.  Plaintiffs can show they are "similarly situated by making substantial

13  allegations, supported by declarations or discovery, that the putative class members were together

14  the victims of a single decision, policy, or plan."  *Rodriguez v. Danell Custom Harvesting, LLC*,

15  293 F. Supp. 3d 1117, 1130 (E.D. Cal. 2018) (quoting *Nen Thio*, 14 F. Supp. 3d at 1340) (internal

16  quotation marks omitted).  Courts apply a lenient standard when determining whether to

17  conditionally certify a collective.  *See Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-AWI-MJS, 2014

18  WL 6685966, at *2 (E.D. Cal. Nov. 26, 2014).  Here, the proposed FLSA collective consists of

19  current or former hourly, non-exempt employees of defendant in the State of California who

20  "claim to have suffered injury as a result of Defendant's uniform policies, practices, and

21  procedures of allegedly failing to properly pay FLSA Members for all hours worked, including

22  minimum and overtime wages."  (Doc. No. 9 at 27.)

23         For all the reasons these groups satisfy the requirements for preliminary certification

24  under Rule 23, the proposed FLSA collective also satisfies the FLSA's less stringent requirement

25  that the members be "similarly situated."  Conditional certification of this FLSA collective is

26  therefore appropriate.

27  _____

28  [7]  See Doc. No. 15 for a description of the ongoing judicial emergency in the Eastern District of
California.

18

1    **C.    Preliminary Settlement Approval**

2        Plaintiff also seeks preliminary approval of the settlement.  Because it has PAGA and

3    FLSA components, the settlement must also meet certain requirements under those acts.  In

4    addition, under Rule 23(e), a court may approve a class action settlement only if it is a fair,

5    reasonable, and adequate resolution of the dispute.  *Bluetooth*, 654 F.3d at 946.  "[P]reliminary

6    approval of a settlement has both a procedural and substantive component."  *Tableware Antitrust*

7    *Litig.*, 484 F. Supp. 2d at 1079 (citation omitted).  In particular, preliminary approval of a

8    settlement and notice to the proposed class is appropriate if:  1) the proposed settlement appears

9    to be the product of serious, informed, non-collusive negotiations; and 2) the settlement falls

10   within the range of possible approval, has no obvious deficiencies, and does not improperly grant

11   preferential treatment to class representatives or segments of the class.  *Id.*

12       1.    The PAGA Component

13       PAGA requires that a proposed settlement be submitted to the LWDA.  Cal Lab. Code at

14   § 2699(l)(2); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D.

15   Cal. 2019) (noting that a proposed settlement should be submitted to the LWDA to allow it to

16   comment if it so desires (citing *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04708-LHK,

17   2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017))).

18       Here, plaintiff avers that the proposed settlement and the amendment to it were submitted

19   to the LWDA on April 8 and April 13, 2020, respectively.  (See Doc. No. 18, Second Suppl.

20   Aiwazian Decl. at ¶ 4.)  To date, the LWDA has not commented on the settlement.  The court will

21   address the fairness, reasonableness, and adequacy of the PAGA penalties below.

22       2.    The FLSA Component

23       The parties assert that there is a bona fide dispute about whether defendants complied with

24   the FLSA's minimum wage and overtime compensation requirements.  (Doc. No. 14 at 11–12.)

25   While plaintiff asserts that defendant violated the FLSA by requiring her and other putative class

26   members "to perform job duties before clocking in, after clocking out, and during meal breaks . . .

27   continuously and at all time[s] during their scheduled work-day" without pay as a matter of

28   policy, defendant contends that "its overtime policies and practices complied with federal law,

1  that employees were required to record all hours worked, and that it paid employees for all hours

2  that were recorded." (*Id.*; *see also* Aiwazian Decl. at ¶¶ 23–29.) In addition, defendant argues

3  that it was never aware "that any work had been performed off-the-clock or during meal and ret

4  periods"; and that the existence of "highly individualized questions of fact" make it difficult to

5  determine whether and to what extent defendant failed to pay any overtime wages—and what, if

6  any, back wages are owed—let alone at a class or representative level. (Aiwazian Decl. at ¶¶ 23–

7  29.)

8       Because the court is satisfied that a bona fide dispute exists in this case, it will also

9  evaluate the fairness of the proposed settlement of the FLSA claims. *See McKeen-Chaplin v.*

10  *Franklin Am. Mortg. Co.*, No. 10-cv-5243-SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19,

11  2012) (finding a bona fide dispute in part because of disputes over the proper damages measure

12  and the amount of overtime hours that the plaintiffs actually worked); *Nen Thio*, 14 F. Supp. 3d at

13  1340 (noting that a bona fide dispute can exist over issues such as the "computation of back

14  wage") (quoting *Yue Zhou v. Wang's Rest.*, No. 05-cv-0279-PVT, 2007 WL 2298046, at *1 (N.D.

15  Cal. Aug. 8, 2007)).

16       3.     Procedural Fairness

17       The court must then consider whether the process by which the parties arrived at the

18  settlement is the product of arm's-length bargaining, rather than collusion or fraud. *See Millan v.*

19  *Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). A settlement is presumed fair

20  if it "follow[s] sufficient discovery and genuine arm[']s-length negotiation." *Adoma v. Univ. of*

21  *Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (citation omitted). In addition, participation

22  in mediation "tends to support the conclusion that the settlement process was not collusive."

23  *Palacios*, 2015 WL 4078135, at *8 (citation omitted).

24       Here, as indicated above, the parties entered into private mediation before the Honorable

25  Steven M. Vartabedian (Ret.), a mediator well-versed in wage-and-hour class actions, on

26  February 18, 2019. (Doc. No. 9 at 10.) During the mediation, the parties

27          exchanged information and discussed various aspects of the case,
            including and not limited to, the claims of Plaintiff, the risks and
28          delays of further litigation and of proceeding with class and

1

2

3

> collective certification and/or representative adjudication, the law relating to off-the-clock theory, meal and rest periods, wage-and-hour enforcement, FLSA claims, and PAGA representative claims, the evidence produced and analyzed, the possibility of appeals, and the risks to recovery.

4  (*Id.* at 18.)  According to plaintiff's counsel, these discussions were conducted "at arm's length in

5  an adversarial position" and "[a]rriving at a settlement that was acceptable to both Parties was not

6  easy" because "Defendant and its counsel felt strongly about its ability to prevail on the merits

7  and at certification, and Plaintiff and Class Counsel believed that they would be able to obtain

8  class certification and prevail at trial." (Aiwazian Decl. at ¶ 12.)  The mediation occurred only

9  after approximately nine months of litigation, during which the parties conducted investigations,

10  interviews, reviews of thousands of pages of data and documents, and a multi-day deposition of

11  defendant's Persons Most Knowledgeable witness.  (Doc. No. 9 at 17.)  The parties also prepared

12  damages and valuations models to determine the potential value and strength of plaintiff's claims.

13  (*Id.* at 18.)  In sum, plaintiff and her counsel assert that the settlement was reached after

14  extensive, good faith, arm's-length negotiations.  (*Id.*)

15      Based on these representations by the parties, the court concludes that the parties'

16  negotiation constituted genuine, informed, and arm's-length bargaining.

17      4.      Substantive Fairness

18          a.      *Adequacy of the Settlement Amount*

19      To evaluate the fairness of the settlement award, the court should "compare the terms of

20  the compromise with the likely rewards of litigation."  *Campbell v. Facebook, Inc.*, No. 17-

21  16873, 2020 WL 1023350, at *12 (9th Cir. Mar. 3, 2020) (citation omitted).  "It is well-settled

22  law that a cash settlement amounting to only a fraction of the potential recovery does not per se

23  render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

24  (9th Cir. 2000), *as amended* (June 19, 2000) (citation omitted).  To determine whether a

25  settlement "falls within the range of possible approval," a court must focus on "substantive

26  fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of

27  the settlement offer."  *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

28  /////

The parties in this case have agreed to a $3,750,000.00 Gross Settlement Fund.  (Doc. No. 9 at 18.)  Assuming the various allocations described earlier in this order are awarded in full, the Net Settlement Fund will be worth approximately $2,200,000.00.  (*Id.* at 11–12.)  Of that, 80% is allocated to the Net Class Settlement, and the remaining 20%, to the Net FLSA Settlement Fund.  (*Id.*)  The entire Net Settlement Fund will be distributed to the Participating Class and FLSA Class Members on a *pro rata* and non-reversionary basis, with any uncashed funds to be donated to California Rural Legal Assistance, Inc.  (*Id.* at 11–12, 30.)

Plaintiff estimates that the maximum potential damages for plaintiff's claims are approximately $18,350,000.00,[8] making the Gross Settlement Fund of $3,750,000.00 an approximately 20 percent recovery of plaintiff's maximum potential claims.[9] (*See* Doc. No. 19 at ¶ 27.)  This settlement amount is in the range of the percentage recoveries that California district courts—including this one—have found to be reasonable.  *See, e.g.*, *Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497-DAD-BAM, 2018 WL 2412325, at *7 (E.D. Cal. May 29, 2018), *modified*, No. 1:15-cv-01497-DAD-BAM, 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018) (approving a settlement of about 12% of the estimated maximum damages); *Glass v. UBS Fin. Servs., Inc.*, No. 3:06-cv-04068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving a settlement of about 25–35% of the estimated maximum).  In addition, the recovery is allocated such that employees will receive payouts that scale directly with their number of Workweeks.  (Doc. No. 23-2 at ¶ 20.)

Plaintiff asserts that the settlement's 20% recovery rate and *pro rata* allocation method is appropriate and fair for several reasons.  (Doc. No. 9 at 18–20.)  First, the settlement fund was determined only after "extensive investigation" that allowed plaintiff's counsel to "calculate the

---

[8] Pursuant to the court's request, plaintiff's counsel has provided supplemental documentation showing that the valuation of plaintiff's FLSA overtime and minimum wage claims included the liquidated damages provided by law.  (Suppl. Aiwazian Decl. at ¶ 19.)  *See* 29 U.S.C. § 216(b).

[9]  Counsel is directed to, in the future, detail and summarize quantitative data using clearly organized tables, charts, etc., that would permit the court to easily verify counsel's assertions.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1204 n.4 (9th Cir. 2013) (noting that district courts can order parties to re-format and re-submit records in a more usable format).

value of the claims and the monetary recovery that could potentially be awarded to Class Members and FLSA Members[.]" (Doc. No. 9 at 19.)  The maximum potential recovery was then discounted, taking into account several factors, including:  1) the uncertainty underlying the estimates of the values of the claim; 2) the risk and rewards inherent in any case; 3) the parties' disputes over class certification, the manageability of the litigation on a representative and class basis, and the merits of the case; and 4) the ultimate recovery rate, even if plaintiff were to prevail, after months or even years of continued and costly litigation.  (*See* Doc. Nos. 9 at 19; 14 at 5–11; Aiwazian Decl. at ¶¶ 26–29; Doc. No. 14-1, Suppl. Aiwazian Decl. at ¶¶ 10–68.)

Second, the *pro rata* allocation formula employed here is fair because each Class and FLSA Member is allocated a payout that scales directly with their Workweeks, and any Class and FLSA Member may dispute the number of Workweeks credited to them.  (Doc. No. 9 at 20, 28.)

Finally, plaintiff's counsel avers that, based on his experience and judgment, this settlement "is within a reasonable range of recoveries for this type of litigation, and is fair, reasonable, adequate, and in the best interest[s]" of the Class and FLSA Members." (Aiwazian Decl. at ¶ 29.)  The court also notes that the amount that each Class and FLSA Member can expect to receive under the settlement, between $505.74 and $4,045.96, and $126.44 and $1,011.49, respectively, is significant, given their average pay of $15.70 an hour.  (Suppl. Aiwazian Decl. at ¶ 11.)  *See Gonzalez v. CoreCivic of Tennessee, LLC*, No. 1:16-cv-01891-DAD-JLT, 2020 WL 1475991, at *11 (E.D. Cal. Mar. 26, 2020).

While "a larger award was theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998) (internal citations and quotation marks omitted)).  For all of these reasons, the court will preliminarily approve the settlement amount reflected in the proposed settlement.

b.   *PAGA Penalties*

The settlement also provides for $75,000.00 in civil PAGA penalties.  (Doc. No. 9 at 11.) Pursuant to the PAGA, 75% of the civil PAGA penalties, or $56,250.00, will go to the LWDA,

1    and 25%, or $18,750, will remain as part of the Net Class Settlement Fund.  (*Id.*)  *See* Cal. Lab.

2    Code § 2699(i).

3          Plaintiff's counsel initially estimated $1,315,500.00 in potential PAGA exposure.  (*See*

4    Aiwazian Decl. at ¶ 27(k); Suppl. Aiwazian Decl. at ¶¶ 56–66.)  After applying the generalized

5    discounts described above, the value of the PAGA claims was further discounted "for the risks

6    associated with obtaining an award of civil penalties and the Court's discretion to reduce civil

7    penalties."  (*Id.*; Doc. No. 14 at 9–10.)  *See* Cal. Lab. Code § 2699(e)(2) ("[A] court may award a

8    lesser amount than the maximum civil penalty amount specified . . . if . . . to do otherwise would

9    result in an award that is unjust, arbitrary and oppressive, or confiscatory.").

10         The resulting $75,000 civil penalty thus represents 2% of the $3,750,000.00 Gross

11   Settlement Fund.  The amount proposed to settle plaintiff's PAGA claims is consistent with other

12   PAGA settlements approved by this court.  *See, e.g.*, *Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-

13   DAD-MJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (approving $100,000.00 in PAGA

14   penalties for a California class with a $3,950,000.00 gross settlement fund).  The court therefore

15   concludes that the settlement of plaintiff's PAGA claims is fair, reasonable, and adequate in light

16   of the PAGA's public policy goals.  *See O'Connor*, 201 F. Supp. 3d at 1133.

17              c.    *Attorneys' Fees*

18         When a negotiated class action settlement includes an award of attorneys' fees, the district

19   court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is

20   reasonable, even if the parties have already agreed to an amount."[10]  *Bluetooth*, 654 F.3d at 941;

21   *see also Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002) (citation omitted).

22   Where, as here, fees are to be paid from a common fund, the relationship between the class

23   members and class counsel "turns adversarial."  *In re Mercury Interactive Corp. Sec. Litig.*, 618

24   F.3d 988, 994 (9th Cir. 2010) (citation omitted).  As a result, the district court must assume a

25   fiduciary role for the class members and "act with 'a jealous regard to the rights of those who are

26

27   ───────────────
     [10]  This requirement also flows from the court's obligation to review and approve any FLSA
28   settlements.  *See Kerzich v. Cty. of Tuolumne*, No. 1:16-cv-01116-DAD-SAB, 2019 WL
     1755496, at *2 (E.D. Cal. Apr. 19, 2019) (listing cases).

1  interested in the fund' in determining what a proper fee award is." *Id.* (internal quotation marks

2  and citations omitted).

3      In evaluating the award of attorneys' fees, "courts have discretion to employ either the

4  lodestar method or the percentage-of-recovery method." *Bluetooth*, 654 F.3d at 942 (citations

5  omitted).  Under either approach, "[r]easonableness is the goal, and mechanical or formulaic

6  application of either method, where it yields an unreasonable result, can be an abuse of

7  discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir.

8  2002).

9      Under the percentage of the fund method, the court may award class counsel a percentage

10  of the common fund recovered for the class; in the Ninth Circuit, the benchmark is 25%.  *Id.* at

11  1007, 1047–48; *see also Bluetooth*, 654  F.3d at 942.  Special circumstances that could justify

12  varying the benchmark award include when counsel achieves exceptional results for the class,

13  undertakes extremely risky litigation, generates benefits for the class beyond simply the cash

14  settlement fund, or handles the case on a contingency basis.  *See In re Online DVD-Rental*

15  *Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015).  An explanation is necessary when the

16  court departs from the 25% benchmark,  *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir.

17  2000), but either way, "[s]election of the benchmark or any other rate must be supported by

18  findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*,

19  290 F.3d 1043, 1048 (9th Cir. 2002).

20      With the lodestar method, the court multiples the number of hours the prevailing party

21  reasonably spent litigating the case by a reasonable hourly rate for counsel.  *Bluetooth*, 654 F.3d

22  at 941.  The product of this computation, the "lodestar" amount, yields a presumptively

23  reasonable fee.  *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

24      The Ninth Circuit has recommended that district courts apply one method but cross-check

25  the appropriateness of the determined amount by employing the other as well.  *See Bluetooth*, 654

26  F.3d at 944.  This diligence is particularly important "when counting *all* hours expended" in a

27  case "where the plaintiff has achieved only limited success" would yield an "excessive amount"

28  of fees, or when awarding a percentage of a "megafund would yield windfall profits for class

25

counsel in light of the hours spent on the case." *Bluetooth*, 654 F.3d at 942 ("Just as the lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate, the percentage-of-recovery method can likewise be used to assure that counsel's fee does not dwarf class recovery.") (internal quotation marks and citations omitted).  Similarly, an upward adjustment could be justified if the recovery is "too small . . . in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Here, the settlement provides that class counsel will seek an award of 35% of the Gross Settlement Fund, equivalent to $1,312,500.00.  (Doc. No. 9 at 21–22.)  This is higher than the 25% benchmark for the Ninth Circuit, *Bluetooth*, 654 F.3d at 942, but not uncommon for wage-and-hour class actions in the Eastern District of California.  *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (listing cases where courts approved attorneys' fees of about one-third of the total settlement).  Here, plaintiff's counsel asserts that this is appropriate considering the time and effort expended by counsel, the contingency fee basis of the representation, the substantial size of the proposed settlement, and the relative strengths and weaknesses of the claims.  (Doc. No. 9 at 23.)  After further inquiry from the court about the size of the fee request, plaintiff's counsel also submitted a supplemental declaration noting that, to date, his firm has spent "approximately 879.95 hours in connection with this matter." (Suppl. Aiwazian Decl. at ¶ 7.)  He also claims that $785.00 would be a reasonable hourly rate of compensation for his firm's efforts in this matter, given that state courts have approved their attorneys' fees requests in other cases based on hourly rates of $831.38 to $855.96.  (*Id.* at ¶ 9.)  Assuming the $785.00 hourly rate, a preliminary lodestar calculation yields a lodestar of $690,760.75; the request for $1,312,500.00 in attorneys' fees is thus nearly twice the lodestar.

Although the court is, for the purposes of preliminary approval, satisfied by the justifications provided by plaintiff's counsel for a departure from the 25% benchmark, the court will, at the final approval stage, carefully re-examine the award of attorneys' fees and conduct a final lodestar cross-check.  At that point, the court expects plaintiff's counsel to provide additional support for a request of attorneys' fees that is currently twice that of the preliminary

1  lodestar amount.[11]  *See Fischel*, 307 F.3d at 1006–07 n.7, 1008 (noting that a district court has

2  discretion to adjust a lodestar upward or downward, including via a multiplier, based on certain

3  reasonableness factors); *see Bluetooth*, 654 F.3d at 941–42 (same).

4                    d.  *Incentive Payment*

5          While incentive awards are "fairly typical in class action cases," they are discretionary

6  sums awarded by the court "to compensate class representatives for work done on behalf of the

7  class, to make up for financial or reputational risk undertaken in bringing the action, and,

8  sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W.*

9  *Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *see also Staton v. Boeing Co.*, 327 F.3d 938,

10  977 (9th Cir. 2003) ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments.").

11  Such payments are to be evaluated individually, and the court should look to factors such as "the

12  actions the plaintiff has taken to protect the interests of the class, the degree to which the class has

13  benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing

14  the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977

15  (citation omitted).

16          Here, plaintiff Castro has requested an incentive payment of $15,000.00.  (Doc. No. 9 at

17  20–21.)  According to her declaration, she has demonstrated a serious interest in and commitment

18  to her role as class representative and spent at least 73 hours working on the case by researching

19  wage-and-hour lawsuits and leading class action and employment law firms; meeting with her

20  attorneys; gathering documents, identifying witnesses, and answering questions about the

21  litigation; and evaluating the proposed settlement agreement.  (Castro Decl. at ¶¶ 7–10.)  She

22  further affirms that:

23              I believe that I have done everything that my attorneys have asked of
            me and have tried, to the best of my ability, to represent the class.  I
24              think my efforts helped to get the result obtained in this case, and as
            a class representative, I respectfully request that the Court award me

25

26  _____

   [11]  "Though the court may well grant an award of that size under certain circumstances, the court
27  cannot abdicate its obligation to protect the rights of absent members by simply defaulting to the
   method [of determining attorneys' fees] proffered by plaintiffs."  *Perez v. All Ag, Inc.*, No. 1:18-
28  cv-00927-DAD-EPG, 2020 WL 1904825, at *9 (E.D. Cal. Apr. 17, 2020).

> an incentive award in the amount of $15,000.00 for my active participation in this case. Taking into consideration the time that I have dedicated to this case, I believe that this amount is reasonable.

(*Id.* at ¶ 11.) Attorney Aiwazian's description of plaintiff Castro's efforts are consistent with her declaration. (*See* Aiwazian Decl. at ¶ 11.)

According to the calculations provided by plaintiff, Participating Class Members will receive between $505.74 and $4,045.96, and Participating FLSA-Members will receive between $126.44 and $1,011.49, based on each member's Workweeks. (Doc. No. 9 at 13.) Thus, an incentive award of $15,000.00 is approximately three times that of the maximum amount a class member could expect to receive from the settlement. (Doc. No. 9 at 13.) Though this figure is not necessarily excessive, *see, e.g.*, *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving an incentive award of $7,500 to each class representative where average class recovery was approximately $500), the Ninth Circuit has repeatedly urged district courts to be "vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (citation omitted).

Having reviewed the proposed $15,000.00 incentive award, the court notes that the amount requested may be disproportionate given the possible disparity with the settlement's average or median award.[12] However, in recognition of the initiative and general well-preparedness demonstrated by plaintiff thus far, the court will preliminarily approve the incentive award on the condition that plaintiff demonstrate at the final approval stage that the requested award is commensurate with and does not dwarf the average or median award received by the Class and FLSA Members.

e. *Release of Claims*

As referenced above, the court notes that the amended Released FLSA Claims were narrowed significantly following the court's inquiry into the breadth of the originally proposed release of FLSA claims. (*See* Doc. Nos. 9 at 15; 13 at 2.)

---

[12] Plaintiff has provided the court with the range of awards possible under the settlement, but has not included information about the size of the average or median award. (*See* Doc. No. 9 at 13.)

All Class Members who do not opt out will be deemed to have released defendant from the abovementioned claims.  (*Id.*)  For FLSA Members, FLSA claims will only be released for those who affirmatively opt in.  (*Id.*)  After reviewing the Released Claims and the amended Released FLSA Claims, the court concludes that they now appropriately track the claims at issue in this case.

**D.      Proposed Class Notice and Administration**

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e).").  For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and clear language:  (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the right of a class member to appear through an attorney, if desired; (5) to right to be excluded from the settlement; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class.  Fed. R. Civ. P. 23(c)(2)(B).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks and citations omitted).

For proposed settlements under the FLSA, "the court [must] provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate.'"  *Adams v. Inter–Con Sec. Sys.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 170 (1989)); *see generally* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

In addition, "courts considering approval of settlements in these hybrid [Rule 23 and FLSA] actions consistently require class notice forms to explain:  '(1) the hybrid nature of th[e]

action; [] (2) the claims involved in th[e] action; (3) the options that are available to California Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collection action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing.'" *Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778-CAB-WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) (quoting *Pierce v. Rosetta Stone, Ltd.*, No. 4:11-cv-01283-SBA, 2013 WL 1878918, at *4 (N.D. Cal. May 3, 2013)).

Here, the settlement provides that the Settlement Administrator will receive a list identifying each Class Member and FLSA Class Member, culled from defendant's business records.  (Doc. No. 19 at 28.)  The Settlement Administrator will then send a Notice Packet to each of those class members, in both English and Spanish; re-mail any returned or undeliverable Notice Packets as necessary; and process any Requests for Exclusion, Workweeks disputes, and Notices of Objections.  (Doc. Nos. 9 at 29; 10 at 12.)  The Notice Packet includes two separate notices, the Notice of Class Action Settlement ("Class Notice") and the Notice of FLSA Settlement ("FLSA Notice.")  (*See* Doc. No. 10, Exs. A, B.)

According to plaintiff, the Notice Packet meets the requirements of Rule 23 by including the following information:

> [T]he nature of the lawsuit, the definition of the Class and FLSA Collective, the terms of the Settlement, information regarding the hybrid nature of the Action and the claims involved in the Action, the scope of the Released Class Claims and Released FLSA Claims, the binding effect of the Settlement, the number of Workweeks credited to each Class Member and FLSA member, and his or her estimated Non-FLSA Payment and FLSA Payment, the consequences of opting into the FLSA Collective to participate in the FLSA Settlement and receive payment, and the allocations for Attorneys' Fees and Costs, Incentive Award, and Settlement Administration Costs[, and] the date, time, and place of the Final Approval Hearing[.]

(Doc. No. 9 at 27.)  The Notice Packet also includes the "procedures and deadlines governing the submission of Requests for Exclusion, Notices of Objections, and disputes regarding the number of Workweeks credited to Class Members and FLSA Members."  (*See* Doc. No. 10, Exs. A, B.)

/////

The court finds that the notice and the manner of notice proposed by plaintiff meet the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and 29 U.S.C. § 216(b), and that the proposed mail delivery is appropriate under these circumstances.

**E.      Settlement Administrator and Settlement Administration Costs**

The parties have agreed to retain Phoenix Class Action Administrative Solutions ("Phoenix") to handle notice and claim administration process and request that Phoenix be appointed to serve as the Settlement Administrator.  (Doc. No. 9 at 28–29; Aiwazian Decl. at ¶ 19.)

The estimated cost of administering this settlement is $15,000.00, which will be deducted from the Gross Settlement Fund.  (*Id.*)  This estimate is consistent with, and in some cases lower than, other settlements submitted to this court.  *See, e.g.*, *Gonzalez v. CoreCivic of Tennessee, LLC*, No. 1:16-cv-01891-DAD-JLT, 2020 WL 1475991, at *14 (E.D. Cal. Mar. 26, 2020) (administration costs of $15,000 for a $3.2 million settlement); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 1:14-cv-02081-DAD-BAM, 2017 WL 1398816, at *5 (E.D. Cal. Apr. 19, 2017) (administration costs of $94,000 for a $25 million settlement); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 117789, at *7 (E.D. Cal. Jan. 11, 2017) (administration costs of $45,000 for a $4.5 million settlement).

Accordingly, the court will appoint Phoenix Class Action Administrative Solutions as the Settlement Administrator.

**F.      Implementation Schedule**

Plaintiff has submitted the following implementation schedule:

| Event | Date |
|---|---|
| Deadline for defendant to provide Phoenix with a list of Class and FLSA Members ("Class List") | Fifteen (15) days after entry of Preliminary Approval Order |
| Deadline for Phoenix to send a Notice Packet to each Class and FLSA Member | Ten (10) days after receipt of the Class List |
| Deadline to file a Notice of Objection, Request for Exclusion, or a Workweeks Dispute | Forty-five (45) days after the initial mailing of the Notice Packet (the "Response Deadline") |

| Deadline to submit a Notice of Objection, Request for Exclusion, or a Workweeks Dispute for Re-Mailed Notice Packets | Fifteen (15) days after the Response Deadline |
|---|---|
| Deadline for Phoenix to send a cure letter to Class Members who submit a defective Request for Exclusion | Three (3) days after receipt of a defective Request for Exclusion |
| Deadline for recipients to cash Settlement Checks | One hundred eighty days (180) from the date of issuance |
| Final Approval Hearing | Approximately six (6) months after the hearing for preliminary approval of the class settlement |

(*See* Doc. No. 9 at 14, 29–30.)

The court finds that the above schedule is appropriate and adopts it.

**CONCLUSION**

Accordingly:

1.   Plaintiff's motion for preliminary approval of class action settlement (Doc. No. 9) is granted;

2.   Plaintiff's counsel, Edwin Aiwazian, Arby Aiwazian, and Joanna Ghosh of Lawyers for Justice, PC, are appointed as class counsel;

3.   The named plaintiff Elizabeth Castro is appointed as class representative;

4.   The proposed notice and claim forms are approved in accordance with Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b);

5.   Phoenix Class Action Administrative Solutions is approved as the settlement claims administrator;

6.   The proposed settlement is approved on a preliminary basis in the manner detailed above;

/////

/////

/////

/////

7.      The hearing for final approval of the proposed settlement is set for November 30, 2020 at 3:00pm before the undersigned in Courtroom 5, with the motion for final approval of class action settlement to be filed at least 28 days in advance of the final approval hearing, in accordance with Local Rule 230(b); and

8.      The settlement implementation schedule set forth above is adopted.

IT IS SO ORDERED.

Dated:   **April 24, 2020**                                        _____

UNITED STATES DISTRICT JUDGE