Edwin Aiwazian (Cal. State Bar No. 232943)
*edwin@calljustice.com*
Arby Aiwazian (Cal. State Bar No. 269827)
*arby@calljustice.com*
Joanna Ghosh (Cal. State Bar No. 272479)
*joanna@calljustice.com*
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

*Attorneys for* Plaintiff and the Class

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIZABETH CASTRO, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>PARAGON INDUSTRIES, INC. DBA BEDROSIANS, a California Corporation; and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | Case No.: 1:19-cv-00755-DAD-SKO<br><br>Honorable Dale A. Drozd<br>Courtroom 5<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Notice of Motion for Final Approval of Class and Collective Action Settlement; Declaration of Settlement Administrator (Kevin Lee); and [Proposed] Order and Judgment filed concurrently herewith]<br><br>Date:　　　　　November 30, 2020<br>Time:　　　　　3:00 p.m.<br>Courtroom:　　5<br><br>Complaint Filed:　May 14, 2018<br>FAC Filed:　　　May 14, 2019<br>Trial Date:　　　None Set |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

I. SUMMARY OF MOTION ........................................................................................................1

II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND.............................................2

III. SUMMARY OF THE SETTLEMENT TERMS .....................................................................4

IV. THE SETTLEMENT ADMINISTRATION PROCESS..........................................................7

V. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT. ...................8

    A. The Settlement Resulted from Arm's-Length Negotiations Based Upon Extensive Investigation and Discovery. ..................................................................9

    B. The Risks Inherent in Continued Litigation Favor Final Approval of the Settlement.....12

    C. The Settlement is Fair, Reasonable, and Adequate..........................................................13

    D. The Class Was Represented by Competent Counsel. .....................................................14

    E. There Are No Objections to the Class Settlement. ..........................................................15

    F. The Settlement Administration Costs Are Fair and Reasonable and Should Be Approved. .........................................................................................................................15

X. CONCLUSION ........................................................................................................................16

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135 .................9, 15

*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43 ...............................................................................8

*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794 ..........................................................................9

*In re American Bank Note Holographics, Inc., Sec. Litig.* (S.D.N.Y. 2001) 127 F.Supp.2d 418 ...........14

*In re Omniivsion Techs., Inc.* (N.D. Cal 2008) 559 F.Supp. 2D 1036...................................................14

*Molski v. Gleich* (9th Cir. 2003) 318 F.3d 937 .....................................................................................15

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523..............................15

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224..............................................................9

**Treatises**

Conte & Newberg, *Newberg on Class Actions* (4th ed., 2002) §11.47 ................................................14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  SUMMARY OF MOTION

Plaintiff Elizabeth Castro ("Plaintiff") seeks final approval of the Class Action and Collective Action Settlement and Release Agreement and Amendment No. 1 to Class Action and Collective Action Settlement and Release Agreement (together, "Settlement," "Agreement," or "Settlement Agreement"), entered into by and between Plaintiff and Defendant Paragon Industries, Inc. dba Bedrosians ("Defendant").

The Settlement provides for a Total Settlement Fund of $3,750,000 and seeks relief on behalf of the following class and collective, respectively:

> With respect to all Released Class Claims, all individuals who are current or former hourly, non-exempt employees of Defendant in the State of California during the period from May 14, 2014 through April 24, 2020 ("Class" or "Class Member(s)").[1]

> With respect to all Released FLSA Claims, all individuals who are current or former hourly, non-exempt employees of Defendant in the State of California during the period from May 14, 2014 through April 24, 2020 ("FLSA Member(s)").[2]

Plaintiff also moves for final approval of all payments allocated and provided for by the Settlement, to be paid from the Total Settlement Fund, including and not limited to, an Incentive Award in the amount of $15,000 to Plaintiff, attorneys' fees in the amount of $1,312,500 and reimbursement of litigation costs and expenses in the amount of $24,659.23 to Class Counsel ("Attorneys' Fees and Costs")[3], Settlement Administration Costs in the amount of $13,000 to the Settlement Administrator, Phoenix Class Action Administration Solutions ("Phoenix"), and civil penalties pursuant to the Private Attorneys General Act, California Labor Code section 2698, *et seq.* ("PAGA"), of which 75%, or $56,250 will be distributed to the Labor and Workforce Development Agency ("LWDA Payment") and 25%, or $18,750, will be part of the Net Settlement Fund.[4] The Net Settlement Fund is the amount that

---

[1] Settlement Agreement, ¶¶ 6-7.
[2] *Id.*, ¶ 18.
[3] In the interest of judicial efficiency, and in support of the allocations and requests for Attorneys' Fees and Costs to Class Counsel and Incentive Award to Plaintiff, Plaintiff respectfully refers the Court to Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award, and papers in support thereof, filed concurrently herewith, on November 2, 2020.
[4] Settlement Agreement, ¶¶ II.24, II.39, III.5, III.6, & III.8.

1
**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES**

will be available for distribution to Settlement Class Members who do not submit a timely and valid request for exclusion from the Class Settlement[5] ("Participating Class Members") and FLSA Members.[6] Eighty percent (80%) of the Net Settlement Fund will be allocated to the Class Settlement ("Net Class Settlement Fund"), and the remaining twenty percent (20%) of the Net Settlement Fund will be allocated to the FLSA Settlement[7] ("Net FLSA Settlement Fund").[8]

The Settlement Agreement is fair, adequate, and reasonable, and is the product of arm's-length, good-faith negotiations by experienced counsel, presided over by a highly regarded mediator experienced in handling complex wage-and-hour class action lawsuits. The Settlement was also well-received by the Class – ***not a single Participating Class Member objected to the Class Settlement or submitted a timely and valid written request to be excluded from the Class Settlement ("Request for Exclusion")***.

Accordingly, the Court should grant final approval of the Settlement, and all payments allocated and provided for by the Settlement Agreement, including and not limited to the Settlement Administration Costs.

## II.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Defendant manufactures, imports, and distributes ceramic and porcelain tiles, decorative and glass mosaics, and natural stone. Plaintiff Elizabeth Castro was employed by Defendant as an hourly-paid, non-exempt employee of Defendant from approximately September 2016 to June 2017.[9]

On May 14, 2018, Plaintiff Castro filed her Class Action Complaint for Damages & Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, Et Seq. ("Complaint") against Defendant in Fresno County Superior Court, on behalf of herself and all current and former non-exempt, hourly-paid individuals employed by Defendant, since May 14, 2014.

///

---

[5] "Class Settlement" means the settlement and resolution of the Class Released Claims, which will be binding on all Participating Class Members. Settlement Agreement, ¶¶ II.8.
[6] Settlement Agreement, ¶ III.9.
[7] "FLSA Settlement" means the settlement and resolution of Released FLSA Claims, which will be binding on all Participating FLSA Members. *Id.*, ¶ I.19.
[8] Settlement Agreement, ¶ II.9
[9] Declaration of Elizabeth Castro ("Castro Decl.") ¶ 2.

On June 22, 2018, Defendant filed its Answer to Plaintiff's Complaint. On July 3, 2018, Defendant filed a First Amended Answer to Plaintiff's Complaint.

On June 29, 2018, Plaintiff propounded form interrogatories, special interrogatories, and requests for production of documents on Defendant and noticed the depositions of Defendant's persons most knowledgeable designees regarding organizational structure and job duties. On July 18, 2018, Plaintiff propounded additional special interrogatories and requests for production of documents.

On August 21, 2018, Defendant provided responses to Plaintiff's form interrogatories, special interrogatories, and requests for production of documents.

On September 5 and 6, 2018, Plaintiff deposed Defendant's person most knowledgeable designee regarding various topics.

On February 18, 2019, the parties participated in a private mediation before the Honorable Steven M. Vartabedian (Ret.), a well-respected mediator experienced in handling complex wage-and-hour matters.

On May 13, 2019, pursuant to stipulation of the Parties and an order by the Fresno County Superior Court, Plaintiff filed a First Amended Class and Collective Action Complaint for Damages & Enforcement Under the Private Attorneys General Act, California Labor Code § 2698, Et Seq. ("First Amended Complaint").  Plaintiff's core allegations are that Defendant violated the California Labor Code and Fair Labor Standards Act ("FLSA") by, *inter alia*, failing to properly pay minimum and overtime wages, failing to provide compliant meal and rest periods or pay associated premiums, failing to timely pay wages upon termination, failing to provide compliant wage statements, failing to maintain requisite payroll records, and failing to reimburse necessary business-related expenses, and thereby engaged in unfair business practices under the California Business and Professions Code and conduct giving rise to penalties under PAGA.

Defendant denies any liability of any kind associated with the claims and allegations, and further denies that Plaintiff or the Class Members and/or FLSA Members are entitled to any relief.  Defendant also denies that this case is appropriate for class, representative, or collective treatment for any purpose other than the Settlement.  Defendant maintains, among other things, that it has complied with federal and California laws in all respects.

On May 19, 2019, Defendant removed the case to the United States District Court for the Eastern District of California under 28 U.S.C. §§ 1331, 1441, and 1446.

After extensive discovery and investigation into the facts of the case, and with the aid of the mediator's evaluations and proposal, the parties reached a settlement to resolve this lawsuit. On October 21, 2019, Plaintiff filed a Motion for Preliminary Approval of Class and Collective Action Settlement ("Motion for Preliminary Approval"). (Dkt. No. 9). On December 3, 2019, a hearing was held on Plaintiff's Motion for Preliminary Approval, during which the Court raised several points of inquiry and requested additional information. (See Dkt. No. 13). On December 20, 2019, Plaintiff filed supplemental papers in support of the Motion for Preliminary Approval (Dkt. No. 14). On April 8, 2020, the Court entered a Minute Order requesting additional information (Dkt. No. 17). On April 15, 2020, Plaintiff filed a supplemental declaration in support of the Motion for Preliminary Approval. (Dkt. No. 18). On April 24, 2020, the Court entered an Order Granting Plaintiff's Motion for Conditional Class Certification and Preliminary Approval of the Proposed Class and Collective Action Settlement, thereby preliminarily approving the terms of the Settlement, the Class Notice and FLSA Notice (together, "Notice Packet"), and the proposed administration procedures and associated deadlines. (Dkt. No. 19)

Plaintiff now moves for final approval of the Settlement and the Settlement Administration Costs.

**III.     SUMMARY OF THE SETTLEMENT TERMS**

Under the Settlement Agreement, Defendant has agreed to pay a Total Settlement Fund of $3,750,000, under which the Net Settlement Fund will be distributed to Class Members who did not submit a timely and valid Request for Exclusion (i.e., Participating Class Members) and FLSA Members.[10] Subject to approval by the Court, the Net Settlement Fund will be calculated by deducting the following amounts from the Total Settlement Fund: (1) attorneys' fees of up to $1,312,500 and reimbursement of actual and documented costs of litigation of $24,659.23 to Class Counsel ("Attorneys' Fees and Costs"); (2) Incentive Award of up to $15,000 to Plaintiff; (3) Settlement

---

[10] Settlement Agreement, ¶¶ II.39 & III.4.

4

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Administration Costs of $13,00 to Phoenix; (4) LWDA Payment in the amount of $56,250; and (5) the employer's share of payroll taxes and contributions with respect to the wage portion of the Non-FLSA Payment and FLSA Payment ("Employer Taxes"), estimated to be $95,000.[11] Assuming the allocations towards these payments are awarded in full, the Net Settlement Fund that will be available for distribution to Participating Class Members and FLSA Members is estimated to be $2,233,590.77.[12] Eighty percent (80%) of the Net Settlement Fund, or $1,786,872.62, will be allocated to the Class Settlement (i.e., Net Class Settlement Fund), and the remaining twenty percent (20%), or $446,718.15, of the Net Settlement Fund will be allocated to the FLSA Settlement (i.e., Net FLSA Settlement Fund).[13]

The Net Class Settlement Fund will be distributed to Participating Class Members on a *pro rata* basis, based upon their number of weeks of employment at any time during the Settled Period ("Workweeks")[14] as compared to the number of Workweeks worked by all Participating Class Members.[15] Each Participating Class Member's *pro rata* share of the Net Class Settlement Fund ("Non-FLSA Payment") is determined by multiplying the Net Class Settlement Fund by a fraction that has as its numerator the individual Participating Class Member's Workweeks and as its denominator the total number of Workweeks of all the Participating Class Members.[16]

The Net FLSA Settlement Fund will be distributed to FLSA Members on a *pro rata* basis, based upon each FLSA Member's number of Workweeks as compared to the total number of Workweeks worked by all FLSA Members.[17] Each FLSA Member's *pro rata* share of the Net FLSA Settlement Fund ("FLSA Payment") is determined by multiplying the Net FLSA Settlement Fund by a fraction that has as its numerator the individual FLSA Member's Workweeks and as its denominator the total number of Workweeks of all the FLSA Members.[18]

---

[11] *Id.*, ¶¶ III.5, III.6, III.7, III.8, & II.13.
[12] See Phoenix Decl., ¶ 14.
[13] Settlement Agreement, ¶¶ III.9
[14] Workweeks are determined by calculating the number of days each Class Member worked for Defendant at any time during the Settled Period, dividing by seven (7), and rounding up to the nearest whole number. See Settlement Agreement, ¶ II.40.
[15] *Id.*, ¶¶ II.40 & III.9.a.1.
[16] *Id.*, ¶ III.9.a.1.
[17] *Id.*, ¶ III.9.a.2.
[18] *Id.*, ¶ III.9.a.2.

5
**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES**

The deadline for Class Members to submit a Request for Exclusion, written objection to the Class Settlement ("Notice of Objection"), and/or written letter challenging the Workweeks credited to each of them ("Workweeks Dispute") to the Settlement Administrator was July 2, 2020 ("Response Deadline").[19] As of the date of this motion, one thousand six hundred sixty-nine (1,669) Class Members did not submit timely and valid Requests for Exclusion, and are, therefore, deemed to be Participating Class Members.[20] There are also one thousand six hundred sixty-nine (1,669) FLSA Members for whom FLSA Payments will be distributed.[21]

Non-FLSA Payments and FLSA Payments (together, "Individual Settlement Payments") will each be allocated as thirty-five percent (35%) wages, which will be reported on an IRS Form W-2; and sixty-five percent (65%) penalties, interest, and non-wage damages, which will be reported on an IRS Form-1099.[22] The Individual Settlement Payments will be reduced by the employee's share of payroll taxes and withholding on the wages portion of the Individual Settlement Payments.[23] The Employer Taxes will be paid from the Total Settlement Fund and are estimated to be approximately $95,000.[24]

All settlement checks issued to Participating Class Members and FLSA Members will remain valid and negotiable for one hundred and eighty (180) calendar days, after which they will be cancelled.[25] The funds associated with cancelled checks will be transmitted to California Rural Legal Assistance, Inc., a non-profit organization.[26]

Participating Class Members are bound by the Class Settlement, including the release of Released Class Claims.[27] FLSA Members who opt-in to the FLSA Settlement by cashing, depositing, or otherwise negotiating their FLSA Payment (individually, "Participating FLSA Member" and collectively, "FLSA Collective") will be deemed to have consented to join an action under the Fair Labor Standards Act ("FLSA") and opted-in on a collective basis with respect to the Released FLSA

---

[19] *Id.*, ¶ III.15, III.16, & III.22; Phoenix Decl., ¶ 6.
[20] Phoenix Decl., ¶ 13.
[21] *Id.*
[22] Settlement Agreement, III.9.b.
[23] Settlement Agreement, ¶ III.9.c.
[24] Phoenix Decl., ¶ 14. Settlement Agreement, ¶ II.24.
[25] Settlement Agreement, ¶ III.24.
[26] Settlement Agreement, ¶ III.24.
[27] Settlement Agreement, ¶ II.28.

Claims, and will be bound by the terms and conditions of the FLSA Settlement.[28] The Settlement Administrator will file a declaration with the Court providing a list of all Participating FLSA Members, by name only, as proof of payment and consent on the part of those individuals who have "opted-in" to the FLSA Collective.[29]

**IV.    THE SETTLEMENT ADMINISTRATION PROCESS**

The Settlement Administrator, Phoenix Class Action Administration Solutions ("Phoenix" or "Settlement Administrator"), took all necessary steps to effectuate the notice and settlement administration process, as set forth in the Court's April 24, 2020 Preliminary Approval Order.

On April 28, 2020, Phoenix received the Court-approved text for the Notice Packet from Class Counsel.[30]  On May 7, 2020, Phoenix received a data spreadsheet from Defendant's counsel containing the full name, most recent mailing address, last known telephone number, Social Security number, and dates of employment for each Class Member and FLSA Member ("Class List").[31]   The Class List contained information for one thousand six hundred sixty-nine (1,669) individuals identified as Class Members and FLSA Members.[32]

On May 18, 2020, after conducting a National Change of Address ("NCOA") search to update the addresses in the Class List, Phoenix mailed the Notice Packet in English and Spanish to one thousand six hundred sixty-nine (1,669) individuals identified as Class Members and FLSA Members via First-Class U.S. Mail.[33]  As of the date of this Motion, one hundred sixty-six (166) Notice Packets have been returned to Phoenix as undeliverable, none of which had forwarding addresses.[34]  Phoenix performed a skip-trace search on the one hundred sixty-six (166) Notice Packets returned as undeliverable without forwarding addresses, located one hundred sixty-four (164) updated addresses, and promptly re-mailed the Notice Packets to the updated address.[35]  Ultimately, fourteen (14) Notice

---

[28] Settlement Agreement, ¶¶ II.17, II.29, & II.33.
[29] Settlement Agreement, ¶¶ III.17.
[30] Phoenix Decl., ¶ 3.
[31] *Id.*, ¶ 4.
[32] *Ibid.*
[33] *Id.*, ¶ 6.
[34] *Id..*, ¶ 7.
[35] *Id.*, ¶ 7.

Packets remained undeliverable.[36]

The Response Deadline was July 2, 2020.[37] As of the date of this Motion, Phoenix has not received any Notices of Objection or Requests for Exclusion from Class Members.[38] Two (2) Workweeks Disputes were submitted and have been resolved.[39] One thousand six hundred sixty-nine (1,669) Class Members, representing 100% of the Class, are deemed to be Participating Class Members who will be paid their *pro rata* portion of the Net Class Settlement Fund, in accordance with the Settlement Agreement.[40]

The Net Class Settlement Fund is estimated to be $1,786,872.62.[41] The highest gross Non-FLSA Payment is currently estimated to be $4,469.70 and the average gross Non-FLSA Payment is currently estimated to be $1,070.6.[42]

There are one thousand six hundred sixty-nine (1,669) FLSA Members who will become Participating FLSA Members if they cash, deposit, or otherwise negotiate their FLSA Payment.[43] The highest gross FLSA Payment is currently estimated to be $1,117.43 and the average gross FLSA Payment is currently estimated to be $267.66.[44] The Non-FLSA Payment and FLSA Payment are subject to reduction for the employee taxes and withholdings.[45]

## V. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

The trial court has broad discretion to determine whether a class action settlement is fair and reasonable. *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 52. To determine whether the settlement is fair and reasonable, courts consider relevant factors such as "the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the

---

[36] *Id.*, ¶ 8. Specifically, two (2) Notice Packets are undeliverable because an updated addres could not be obtained and twelve (12) Notice Packets were returned a second time. *Ibid.*
[37] Phoenix Decl., ¶ 9.
[38] *Id.*, ¶¶ 10-11.
[39] *Id.*, ¶ 12.
[40] Phoenix Decl., ¶ 13.
[41] *Id.,* ¶ 15.
[42] Phoenix Decl., ¶ 15.
[43] *Id.,* ¶ 6.
[44] Phoenix Decl., ¶ 16.
[45] *Id.,* ¶¶ 13 & 14.

8

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801. "The list of factors is not exclusive and the court is free to engage in a balancing and weighing of the factors depending on the circumstances of each case." *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 245. "Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk*, *supra*, 48 Cal.App.4th at 1801.

The proponent of the settlement has the burden to show that it is fair and reasonable. *Wershba*, *supra*, 91 Cal.App.4th at 245. At the final approval stage, a presumption of fairness exists where, as here: "(1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." *Dunk*, *supra*, 48 Cal.App.4th at 1802. In reviewing a class settlement, the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute. *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1146. The inquiry is not whether the settlement agreement is the best one that class members could have possibly obtained, but whether the settlement taken as a whole is "fair, adequate, and reasonable." *Chavez v. Netflix* (2008), 162 Cal.App.4th 43, 55. A settlement need not obtain 100 percent of the damages sought in order to be fair and reasonable. *Wershba*, *supra*, 91 Cal.App.4th at 251. Even if the proposed settlement affords relief that is substantially narrower than it would be if the lawsuit was to be successfully litigated, that is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding prolonged litigation. *Id*.

### A. The Settlement Resulted from Arm's-Length Negotiations Based Upon Extensive Investigation and Discovery.

The parties actively litigated this case since it commenced on May 14, 2018. Both sides used the pre-mediation time period to investigate the veracity, strength, and scope of the claims, and Class Counsel was actively preparing the matter for class certification and trial.[46] Class Counsel conducted a

---

[46] Declaration of Edwin Aiwazian ("Aiwazian Decl."), ¶ 6 filed concurrently herewith the Motion for Attorneys' Fees and Costs, and Incentive Award.

9

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

thorough investigation into the facts of the case, including, *inter alia*, interviewing Plaintiff and Class Members, engaging in formal and informal discovery, and reviewing and analyzing thousands of pages of data and documents, including, but not limited to: employment records of Plaintiff and other Class Members and FLSA Members; class-wide data regarding the class size, number of workweeks, pay periods, and terminations during the time period at issue; policies (including, but not limited to, Business Travel and Expense Compensation Policy, Employment Policy, Safety Policy, and Customer Treatment Policy); multiple iterations of Defendant's New Employee Packet (which included, *inter alia*, policies and procedures regarding meal and rest periods, timekeeping requirements, dress code standards, overtime, and reimbursements); Defendant's Organizational Chart; Defendant's Dress Code; internal memoranda; various agreements and acknowledgements; and numerous other documents regarding Defendant's employment policies, practices, and procedures, among other information and documents.[47] These documents provided Class Counsel with a critical understanding of the nature of the work performed by Settlement Class Members and Defendant's written and unwritten policies, practices, and procedures, and were used in analyzing liability and damage issues in connection with all phases of the litigation, and ultimately with the settlement negotiations.[48] Further, Class Counsel deposed Defendant's person most knowledgeable witness over the course of two (2) days.[49] Class Counsel also drafted and revised the pleadings; prepared and served discovery requests; prepared for settlement negotiations; met and conferred with defense counsel over issues relating to pleadings, jurisdiction, discovery, and exchange of documents; and undertook damages/valuation calculations.[50]

After conducting significant investigation into the facts of the case and exchanging documents and data informally, the parties participated in private mediation conducted by Honorable Steven M. Vartabedian (Ret.), a well-respected mediator experienced in handling complex wage-and-hour matters.[51] Prior to and during mediation and settlement negotiations, the parties exchanged information and discussed various aspects of the case, including but not limited to, the risks and delays of further litigation, the risks to

---

[47] *Id.*, ¶ 6.
[48] *Ibid.*
[49] *Id.*, ¶ 6.
[50] *Ibid.*
[51] Aiwazian Decl., ¶ 8

the parties of proceeding with certification, the law relating to off-the-clock theory, meal and rest periods, PAGA representative claims, FLSA claims, and wage-and-hour enforcement, the evidence produced and analyzed, the possibility of appeals, and the risk of recovery by Class Members and FLSA Members, among other things. After extensive investigation, analysis, and negotiations, the parties ultimately reached the Settlement to resolve this case in its entirety.[52] During all settlement discussions, the parties conducted their negotiations at arm's length in an adversarial position. The Settlement that was reached is a fair, reasonable, and adequate resolution of this case.[53] Arriving at a settlement that was acceptable to the parties was not easy. Defendant and its counsel felt very strongly about Defendant's ability to prevail on the merits and to obtain a denial of class certification, while Plaintiff and Class Counsel believed that class and collective certification would be obtained and that they would prevail at trial.[54] After conducting significant investigations into the facts of the case, exchange of data and documents, settlement negotiations, and with the aid of the mediator's evaluation and proposal, the parties agreed that this case was well-suited for settlement given the legal issues relating to Plaintiff's principal claims, as well as the costs and risks to the parties that would attend further litigation.[55] These risks of further litigation include, and are not limited to, a determination that the claims were unsuitable for class, representative, or collective treatment, and failure to obtain certification, class de-certification after certification of a class, allowing a jury to decide the claims asserted in the case, appeals, and the real possibility of no recovery after years of litigation.[56]

The Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at certification, trial, and/or appeals.[57] Class Counsel interviewed, and obtained information from Plaintiff and other Class Members and FLSA Members, reviewed and analyzed a large volume of documents and data produced by Defendant and obtained through other sources, and performed significant research into the law concerning class certification, FLSA collection actions, representative PAGA claims, off-the-clock theory, meal and rest

---

[52] *Ibid.*
[53] *Ibid.*
[54] *Ibid.*
[55] *Ibid.*
[56] *Ibid.*
[57] *Ibid.*

11

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

breaks, wage-and-hour enforcement, Plaintiff's claims, and Defendant's defenses, as well as facts discovered.[58] The Settlement was based on this large volume of facts, evidence, and investigation.[59] Additionally, Class Counsel has extensive experience in handling complex wage-and-hour matters, including significant experience in employment class action litigation.[60]

### B. The Risks Inherent in Continued Litigation Favor Final Approval of the Settlement.

The Settlement, which provides for a Total Settlement Fund of $3,750,000, represents a fair, adequate, and reasonable resolution of the case, given the risks inherent in litigating class, representative, and collective claims through certification proceedings, trial, and/or appeals.[61] The Settlement was calculated using information and data uncovered through extensive case investigation, and exchange of information in advance of and/or in the context of mediation and settlement negotiations.[62] Had the case not settled, Defendant would have vigorously challenged certifiability, representative adjudication, and liability. Defendant contended that individualized questions of fact predominate over any common issues, and these issues would pose challenges to certification and manageability. Defendant would have likely argued at trial, if any, that Plaintiff's claims were not appropriate for class, representative, and/or collective treatment. On the other hand, Defendant also faced the risk of the Court certifying the action and allowing a jury to decide Plaintiff's claims on a class, representative, and/or collective basis. Additionally, preparation for trial would have been expensive for all parties.

It is preferable to reach an early resolution of a dispute because such resolutions save time and money that would otherwise go to litigation. If the case had settled after further litigation, the settlement amount would have taken into account the additional costs incurred, and there might have been less money available for the Class Members after all was said and done. This is not just an abstract contention. The risks and expenses of further litigation outweighed any benefit that might have

---

[58] Aiwazian Decl., ¶¶ 6 & 8.
[59] *Id.*, ¶¶ 4-8.
[60] *Id.*, ¶¶ 16-18.
[61] *Id.*, ¶ 21.
[62] *Id.*, ¶¶ 4-8.

12

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

been gained otherwise. These risks of further litigation include a determination that the claims were unsuitable for class, representative, and/or collective treatment, failure to obtain certification, class de-certification after certification of a class and/or collective, allowing a jury to decide the claims asserted in the case, and the real possibility of no recovery after years of litigation. Additionally, the parties were moving into the phase of the litigation where they would have to conduct significant additional formal discovery, including and not limited to, additional written discovery requests and additional depositions of Defendant's Person Most Knowledgeable ("PMK") designees, expert witnesses, and percipient witnesses. Discovery disputes would have certainly arisen, which would have cost the parties additional time and money. In contrast, the Settlement provides significant benefits for the Class Members and FLSA Members here and now, while avoiding the further expenses, risks, and delay of prolonged litigation with only the possibility of recovery.

It would be grossly inefficient for such a large class of current and former employees to bring individual actions to recover from Defendant for the alleged violations of wage-and-hour laws. Moreover, the potential individual recovery that could be obtained by a Class Member and FLSA Member would not be significant enough to provide him or her with the incentive to sue. By granting final approval of the Settlement, the Court can approve a resolution that provides a certain and substantial recovery.

### C. The Settlement is Fair, Reasonable, and Adequate.

The Settlement, which provides for a Total Settlement Fund of $3,750,000, represents a fair, reasonable, and adequate resolution of this case. The Settlement was calculated using information and data uncovered through extensive case investigation, and informal exchange of information and documents in advance of and in the context of mediation and settlement discussions. The Settlement takes into account the potential risks and rewards inherent in any case and, in particular, with this case. Considering the facts in this case, the Settlement represents a considerable recovery.

Even after deducting attorneys' fees in the amount of $1,312,500, litigation costs and expenses in the amount of $24,659.23, Incentive Award in the amount of $15,000, LWDA Payment in the amount of $56,250, Employer Taxes estimated to be $95,000, and Settlement Administration Costs in the amount of $13,000 from the Total Settlement Fund, the Net Settlement Fund is currently estimated

13

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

to be $2,233,590.77.[63] As discussed in Section III, *supra*, each Participating Class Member will be issued a Non-FLSA Payment based on his or her number of Workweeks and each FLSA Member will be issued an FLSA Payment based on his or her number of Workweeks. To date, one thousand six hundred sixty-nine (1,669) Class Members are deemed to be Participating Class Members, and there are one thousand six hundred sixty-nine (1,669) FLSA Members.[64] The highest gross Non-FLSA Payment of a Participating Class Member is currently estimated to be $4,469.70 and the average gross Non-FLSA Payment is currently estimated to be $1,070.62.[65] The highest gross FLSA Payment is currently estimated to be $1,117.43 and the average gross FLSA Payment is currently estimated to be $267.66.[66] The Non-FLSA Payments and FLSA Payments are subject to reduction for the employee taxes and withholdings.

At the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by experienced and competent class counsel." *In re American Bank Note Holographics, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418, 429-30. In light of the above considerations, Class Counsel believes that the Settlement as a whole is fair, reasonable, and adequate, and in the best interest of the Class.[67] Although the recommendations of Class Counsel are not conclusive, the Court can properly take the recommendations into account, particularly if Class Counsel appears to be competent, have experience with this type of litigation, and significant discovery and investigation have been completed. Conte & Newberg, *Newberg on Class Actions* (4th Ed., 2002) § 11.47; *In re Omnivsion Techs., Inc.* (N.D. Cal 2008) 559 F.Supp.2D 1036, 1043 (citation omitted). Accordingly, the Court should grant final approval of the Settlement.

**D.     The Settlement Class Was Represented by Competent Counsel.**

Class Counsel has extensive experience in employment class action law and complex wage-and-hour litigation.[68] Lawyers *for* Justice, PC has been appointed class counsel in numerous complex wage-

---

[63] Phoenix Decl., ¶ 15.
[64] *Id.*, ¶ 13.
[65] *Id.*, ¶ 15.
[66] Phoenix Decl., ¶ 16.
[67] Aiwazian Decl., ¶ 18.
[68] *Id.*, ¶¶ 15-18.

14

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

and-hour cases, and have recovered millions of dollars for individuals in California.[69] Both parties' counsel were capable of assessing the strengths and weaknesses of the Class Members' claims against Defendant and the benefits of the Settlement under the circumstances of this case and in the context of settlement negotiations.

### E. There Are No Objections to the Class Settlement.

The Settlement has been well received by the Class – ***not a single Class Member objected to or opted out of the Class Settlement***.[70] In evaluating the fairness, adequacy, and reasonableness of a settlement, courts also consider the reaction of the class to the settlement. *Molski v. Gleich* (9th Cir. 2003) 318 F.3d 937, 953. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 528-29.

California courts have consistently found that a small number of objectors indicates the class' support for a settlement and strongly favors final approval. *Wershba*, *supra*, 91 Cal.App.4th at 250-51 (final approval granted despite 20 objectors); *7-Eleven Owners*, *supra*, 85 Cal.App.4th at 1152-53 (final approval granted despite 9 objectors).

Here, the lack of objections speaks volumes about the fairness, reasonableness, and adequacy of this Settlement. Accordingly, the Settlement as a whole is presumed to be fair, reasonable, and adequate, and the Court should grant final approval of the Settlement in its entirety. *Dunk*, *supra*, 48 Cal.App.4th at 1802.

### F. The Settlement Administration Costs Are Fair and Reasonable and Should Be Approved.

As set forth in the accompanying Declaration of Kevin Lee on Behalf of Settlement Administrator Regarding Settlement Notice Administration, the total costs incurred and to be incurred by Phoenix for the notice and settlement administration process are $13,000.[71] The costs incurred and

---

[69] *Ibid.*
[70] Phoenix Decl., ¶¶ 10 & 11.
[71] *Id.*, ¶ 16.

to be incurred include, but are not limited to, expenses for formatting, printing, and mailing the Notice Packet to Class Members and FLSA Members in English and Spanish; conducting a National Change of Address database search prior to mailing the Notice Packet to Settlement Class Members and FLSA Members and performing a skip-trace search on any Notice Packets returned as undeliverable; calculating each Participating Class Member's Non-FLSA Payment and each FLSA Member's FLSA Payment; receiving and processing Requests for Exclusion, Notices of Objection, and Workweeks Disputes; distributing Non-FLSA Payments and FLSA Payments after reduction for required employee-side payroll taxes and withholding on the wages portion to all Participating Class Members and FLSA Members as provided in this Settlement Agreement; and performing any other duties necessary to carry out its responsibilities as set forth in the Agreement.

Accordingly, the Court should grant final approval of payment to Phoenix, a necessary third-party for handling of the notice and settlement process, in the amount of $13,000.

## X.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement and payments allocated and provided for by the Settlement, including Settlement Administration Costs, in accordance with the Settlement.

Dated: November 2, 2020                         **LAWYERS *for* JUSTICE, PC**

By:   /s/ Edwin Aiwazian
      Edwin Aiwazian
      *Attorneys for* Plaintiff and the Class