1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ELIZABETH CASTRO, individually, and          No.  1:19-cv-00755-DAD-SKO
      on behalf of similarly situated members of
12    the general public and other aggrieved
      employees pursuant to the California
13    Private Attorneys General Act,               ORDER GRANTING MOTIONS FOR FINAL
                                                   APPROVAL OF CLASS AND COLLECTIVE
14                        Plaintiff,               ACTION SETTLEMENT AND GRANTING
                                                   MOTION FOR ATTORNEY FEES, COSTS,
15          v.                                     AND INCENTIVE AWARD IN PART

16    PARAGON INDUSTRIES, INC., a                  (Doc. Nos. 21, 22)
      California Corporation d/b/a as
17    BEDROSIANS,

18                        Defendant.

19

20          This matter came before the court on November 30, 2020, for hearing on plaintiff's

21   unopposed motion for final approval of a class and collective action settlement and for an award

22   of attorneys' fees, costs, and an incentive award, filed on behalf of plaintiff Elizabeth Castro.

23   (Doc. Nos. 21, 22.)  Attorney Joanna Ghosh appeared telephonically on behalf of plaintiff and the

24   class and collective action.  Attorney Mark D. Kruthers appeared telephonically on behalf of the

25   defendant.

26          For the reasons set forth below, the court will grant final approval of the class and

27   collective action settlement and will grant the motion for the award attorneys' fees, costs, and an

28   incentive award to plaintiff Castro in part.

                                                     1

**BACKGROUND**

The court previously granted preliminary approval of the settlement in this action on April 27, 2020.  (Doc. No. 19.)  The pertinent factual background may be found in that order and will not be repeated here.  On November 2, 2020, plaintiff filed both the pending unopposed motions for attorneys' fees and for final approval of the class and collective action settlement.  (Doc. Nos. 21, 22.)  As of the date of the hearing on November 30, 2020, no objections to the settlement had been received nor filed with the court, and no class members have opted out of the settlement.

Between the granting of preliminary approval and the final fairness hearing, the court became aware that the mediator involved in the settlement of this action was Of Counsel the firm representing defendant Paragon Industries, Inc. in this action, a fact that had not been divulged to this court.  At the hearing on the pending motions, the court identified this and several other areas of concern and directed the parties to submit supplemental briefing addressing those concerns, which the parties did on December 31, 2020.  (Doc. No. 25.)  However, the parties' supplemental briefing did not fully address all of the court's concerns, and on March 29, 2021, the court provided the parties one final opportunity to support the pending motion for approval of the proposed settlement agreement.  (Doc. No. 26.)  After the granting of an extension of time, plaintiff filed a further supplemental declaration in support of the motions on April 26, 2021. (Doc. No. 29.)

**FINAL CERTIFICATION OF SETTLEMENT CLASS AND COLLECTIVE**

The court conducted an examination of the class action factors in the order granting preliminary approval of the settlement and found certification to be warranted.  (Doc. No. 19 at 13–18.)  Because no additional substantive issues concerning the certification have been raised, the court does not repeat its prior analysis here, and finds that final class and collective action certification in this case is appropriate.

**A.      The Rule 23 Class**

The following class (the "Class") of an estimated 1,447 individuals (the "Class Members") is therefore certified for settlement purposes:

/////

2

> With respect to all Released Class Claims, all individuals who are current or former hourly, non-exempt employees of Defendant in the State of California during the period from May 14, 2014 through the date the Court grants preliminary approval of the Settlement ("Settled Period" or "Class Period").

(Doc. Nos. 9 at 10–11; 10, Ex. 1 at ¶¶ 6–7.)  In addition, and for the reasons stated in the order granting preliminary approval, plaintiff Elizabeth Castro is confirmed as class representative, attorneys Edwin Aiwazian, Arby Aiwazian, and Joanna Ghosh of Lawyers for Justice, PC, are confirmed as class counsel, and Phoenix Class Action Administrative Solutions ("Phoenix") is confirmed as the settlement administrator.

**B.      The FLSA Collective**

The following FLSA collective (the "FLSA Collective") is also certified for settlement purposes:

> The FLSA Collective will consist of all FLSA Members who cash, deposit, or otherwise negotiate their check for payment of their share of the Net FLSA Settlement Fund (as defined below) and who will be bound by the settlement and resolution of the Released FLSA Claims ("FLSA Settlement").  FLSA Members are, with respect to all Released FLSA Claims, all individuals who are current or former hourly, non-exempt employees of Defendant in the State of California during the Settled Period.

(Doc. Nos. 9 at 11; 10, Ex. 1 at ¶ 18.)

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P. 23(e).  Federal Rule 23 requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable.  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  The settlement as a whole, rather than the individual component parts, is examined for overall fairness.  *Hanlon,* 150 F.3d at 1026.

To approve a settlement, a district court must:  (i) ensure notice is sent to all class members; (ii) hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement;

3

1  and (iv) class members be given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).  The

2  amended settlement agreement in this action was previously filed on the court's docket (*see* Doc.

3  No. 10, Ex. 1), and class members have been given an opportunity to object.  The court now turns

4  to the adequacy of notice and its review of the settlement following the final fairness hearing.

5  **A.      Notice**

6          Adequate notice of the class settlement must be provided under Rule 23(e).  *Hanlon*, 150

7  F.3d at 1025; *see also Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting that the

8  court need not ensure all class members receive actual notice, only that "best practicable notice"

9  is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal.

10  Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class

11  members, it does not require that each individual actually receive notice.").  "Notice is

12  satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those

13  with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Vill.,*

14  *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist.*

15  *No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Any notice of the settlement sent to the class should

16  alert class members of "the opportunity to opt-out and individually pursue any state law remedies

17  that might provide a better opportunity for recovery."  *Hanlon*, 150 F.3d at 1025.

18          The court previously reviewed the notice provided in this case at the preliminary approval

19  stage and found it to be satisfactory.  (Doc. No. 19 at 29–31.)  Following the grant of preliminary

20  approval, the settlement administrator Phoenix conducted a National Change of Address search to

21  update the list of proposed class members with current addresses and then mailed the court-

22  approved notice to the 1,669 proposed class and FLSA collective members.  (Doc. No. 22-2 at

23  ¶ 6.)  Of the 1,669 initial mailings, 166 were returned as undeliverable.  (*Id.* at ¶ 7.)  None of

24  those 166 were returned with forwarding addresses.  (*Id.*)  The administrator searched for updated

25  addresses in a "skip tracing" database for those individuals whose mailings were returned as

26  undeliverable and was able to find updated addresses for 164 proposed class members, who then

27  were re-mailed the notices.  (*Id.*)  As of October 30, 2020, just 14 packets were identified as

28  undeliverable:  for two individuals whose current addresses could not be found, and twelve

4

packets that were returned a second time. (*Id.* at ¶ 8.)  Thus, of the 1,669 total class members, 1,654 potential class members, or 99.1 %, are estimated to have received actual notice of the settlement.  (*Id.*)

Given the above, the court accepts the reports of the settlement administrator and finds adequate notice has been provided, thereby satisfying Federal Rule of Civil Procedure 23(e)(1). *Silber*, 18 F.3d at 1453–54; *Winans*, 2016 WL 107574, at \*3.

**B.    Final Fairness Hearing**

On November 20, 2020, the court held a final fairness hearing, at which class counsel and defense counsel appeared telephonically.  (Doc. No. 24.)  The court now must determine whether the settlement is fair, adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).

In assessing the fairness of a class action settlement, courts balance:  (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009).  These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case.  *Churchill Vill.*, 361 F.3d at 576 n.7.

While the Ninth Circuit has observed that "strong judicial policy . . . favors settlements," *id.* at 576 (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)), where the parties reached a settlement agreement prior to class certification, the court has an independent duty on behalf of absent class members to be vigilant for any sign of collusion among the negotiating parties.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (noting "settlement class actions present unique due process concerns for absent class members" because the "inherent risk is that class counsel may collude with the defendants, /////

tacitly reducing the overall settlement in return for a higher attorney's fee") (internal quotation marks and citations omitted).

The court takes its independent duty to protect absent class members seriously.  As noted above, once the court learned that the parties had employed a mediator who ostensibly had a relationship to defense counsel,[1] the court investigated that matter at the final fairness hearing and requested supplemental briefing addressing it.  The findings made in the preliminary order had rested on the reasonable assumption that the mediation on February 18, 2019 had taken place before a neutral mediation; and in the lengthy period of time since the date of the mediation, neither of the parties provided the court any information that the mediator had an association with defense counsel, a fact which should have been disclosed and explained to the court.

At the final fairness hearing, counsel for defendants indicated that he believed the mediator's financial relationship with counsel's firm was limited to rent and other office-sharing costs, but otherwise, the mediator's work and compensation structure were separate from that of the firm.[2]  In the supplemental briefing, counsel for plaintiff stated that the mediator was actually mutually-selected by the parties, that he "acted as highly-qualified, neutral third-party mediator," and that plaintiff's counsel were "fully aware" of the mediator's Of Counsel "association" with defense counsel's law firm.  (*Id*. at 5; Doc. No. 25-2 at 3.)

Furthermore, because of the lack of information provided by the documents submitted in the motion for final approval, and in light of the revelation of the issue with respect to the mediator employed by the parties, the court became concerned that there was not adequate support provided by plaintiff for the valuation of the claims because they had been presented by plaintiff's counsel in merely a hypothetical manner, rather than as an approximation of the amount of damages actually suffered by the class and collective as a result of the alleged

---

[1]  The court does not in any way seek to denigrate the mediator or suggest any lack of disclosure on his part.  Indeed, it is the parties' failure to reveal this information that troubled the court.  The court's concerns are not in any way related to the ability or quality of the mediator's work nor meant to suggest any negative inferences regarding his character.

[2]  Although counsel did not provide a declaration in the supplemental briefing confirming this, the court nonetheless relies the information provided by counsel.

1    violations and because it was unclear to the court what evidence or rationale was being relied

2    upon to support the violation rates employed by plaintiff.  (*See* Doc. No. 26.)  The court

3    subsequently requested supplemental briefing after the final fairness hearing to address these

4    concerns as well.  (*Id.*)

5         The two most recent rounds of supplemental briefing have now largely addressed the

6    court's remaining concerns, and the court will proceed to evaluate each of the relevant settlement

7    factors below.

8         1.    Strength of Plaintiff's Case

9         Plaintiff asserts that continuing to litigate this action would have faced many challenges,

10   despite plaintiff's confidence in their case.  Plaintiff contends that defendant's common, uniform

11   policies, systemic practices, and procedures caused employees not to be provided with meal and

12   rest periods and required class members to perform work before and after clocking in.  (Doc. No.

13   10 at ¶ 25; *see also* Doc. No. 9-1 at ¶¶ 3–6.)  Plaintiff further alleges that the defendant

14   "intentionally and willfully failed to pay [p]laintiff and other [c]lass [m]embers all wages due to

15   them . . . within the time period permissible under California law, thereby triggering waiting-time

16   penalties under California Labor Code section 203[,] . . . [T]he wage statements provided by

17   [d]efendant and the payroll records kept by [d]efendant were inaccurate[,] . . . [and] that

18   [d]efendant failed to reimburse [p]laintiff and the other [c]lass [m]embers for necessary business

19   expenses, including but not limited to, the costs associated with purchasing clothing to comply

20   with [d]efendant's dress code policy and office supplies." (*Id.*)  Conversely, plaintiff notes

21   "[d]efendant and its counsel felt very strongly about [d]efendant's ability to prevail on the merits

22   and to obtain a denial of class certification, while [p]laintiff and [c]lass [c]ounsel believed that

23   class certification would be obtained and that they would prevail at trial." (Doc. No. 21-2 at ¶ 8.)

24   According to plaintiff, defendant's opposition would present challenges to class certification and

25   to plaintiff's ability to prevail on the merits.  (*Id.*; Doc. No. 29 at 3–21.)

26   /////

27   /////

28   /////

7

2.      Risk, Expense, Complexity, and Likely Duration of Further Litigation and Risk of
        Maintaining Class Action Status Through Trial

Because of the aforementioned challenges, plaintiff believes this hybrid class and collective action would involve extensive litigation.  (Doc. No. 22).  Plaintiff argues the risks of further litigation include "a determination that the claims were unsuitable for class, representative, and/or collective treatment, failure to obtain certification, class decertification after certification of a class and/or collective, allowing a jury to decide the claims asserted in the case, and the real possibility of no recovery after years of litigation." (*Id*. at 16.)  Plaintiff additionally argues that continuing to litigate would require the conducting of significant additional formal discovery, including further written discovery requests and additional depositions of defendant's corporate representatives, expert witnesses, and percipient witnesses. (*Id*.)  Plaintiff argues that discovery disputes would have cost the parties additional time and money.  Because this case has not yet proceeded to the class certification stage, substantial expense would likely be incurred in litigating a class certification motion, propounding and responding to merits-phase discovery, disputing any dispositive motions, and ultimately trying the case.  According to plaintiff, it is not only possible but likely that further litigating this case to a final resolution would have required significant investments of both time and expenses, absent a settlement.

3.      Amount Offered in Settlement

Here the parties have agreed to a $3,750,000.00 gross settlement, allocated as follows: (1) up to $1,312,500.00 for attorneys' fees and up to $55,000.00 for litigation costs; (2) up to $15,000.00 as an incentive award for plaintiff, (3) $75,000.00 in civil PAGA penalties;[3] (4) an estimated $15,000.00 for settlement administration costs; (5) approximately $95,000.00 in employer payroll taxes and contributions; and (6) the remainder of the funds being allocated to /////

---

[3]  Under the PAGA statute, 75% of the civil PAGA penalties, or $56,250.00, will go to the California Labor and Workforce Development Agency ("LWDA"), and 25%, or $18,750, will be allocated to the Net Class Settlement Fund. (Doc. Nos. 22 at 4; 9 at 11.) *See* Cal. Lab. Code § 2699(i).

1   the class and collective Net Settlement Fund.[4]  (Doc. Nos. 9 at 11–12; 14 at 19–20.)  Class

2   counsel estimates that the gross settlement amount is approximately 20 percent of the maximum

3   potential damages for the claims, which is estimated as $18,355,095.00; however class counsel

4   further asserts that a risk-adjusted, discounted "reasonable" value of the claims is $3,633,519.85.

5   (*See* Doc. No. 19 at ¶ 27; 25-2 at 11; 29 at 5.)

6          Eighty percent of the Net Settlement Fund will be allocated to the Class Settlement and

7   the remaining twenty percent will be allocated to the FLSA Settlement.  The Net Class Settlement

8   Fund will be distributed to class members on a *pro rata* basis, by dividing each individual's

9   number of weeks of employment at any time during the Settled Period ("Workweeks") out of the

10  number of Workweeks worked by all class members.  The Net FLSA Settlement Fund will

11  similarly be distributed to FLSA Members on a *pro rata* basis, based upon each FLSA Member's

12  number of Workweeks out of to the total number of Workweeks worked by all FLSA Members.

13  (*Id.*)  Based on plaintiff's current estimate of the Net Class Settlement, the average individual

14  class members are expected to recover $ 1,070.62 with the highest gross class payment currently

15  estimated to be $4,469.70.  The average FLSA Members are estimated to recover $267.66 and the

16  highest FLSA payment is estimated to be $1,117.43.  The Private Attorneys General Act,

17  California Labor Code § 2698, *et seq*. ("PAGA") penalties are approximately $75,000, of which

18  75%, or $56,250 will be distributed to the LWDA, and $18,750 will become part of the Net

19  Settlement Fund.  Plaintiff asserts that the settlement's 20% recovery and the *pro rata* allocation

20  method is appropriate and fair.  None of the settlement will revert to defendant since checks that

21  are not cashed before their expiration will be cancelled with the funds to be transmitted to

22  California Rural Legal Assistance, Inc., a non-profit organization. (Doc. No. 9 at 30.)

23          The proposed settlement amount is in the range of the percentage recoveries that

24  California district courts—including this one—have found to be reasonable.  *See, e.g.*, *Singh v.*

25  ---

   [4]  Plaintiff asserts that the Net Settlement Fund will be calculated by deducting any court-allowed
26  award of attorney's fees and costs, any incentive award to plaintiff Castro, settlement
   administration costs, the required Labor and Workforce Development Agency ("LWDA")
27  payment in the amount of $56,250; and the employer's share of payroll taxes and contributions
   with respect to the wage portion of the Non-FLSA Payment and FLSA Payment estimated to be
28  $95,000.  (Doc. No. 22 at 7–8.)

1   *Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497-DAD-BAM, 2018 WL 2412325, at *7

2   (E.D. Cal. May 29, 2018), *modified*, No. 1:15-cv-01497-DAD-BAM, 2018 WL 4382202 (E.D.

3   Cal. Sept. 13, 2018) (approving a settlement of approximately 12% of the estimated maximum

4   damages); *Glass v. UBS Fin. Servs., Inc.*, No. 3:06-cv-04068-MMC, 2007 WL 221862, at *4

5   (N.D. Cal. Jan. 26, 2007) (approving a settlement of approximately 25–35% of the estimated

6   maximum damages).  In addition, the recovery is allocated such that employees will receive

7   payouts that scale directly with their number of Workweeks. (Doc. No. 23-2 at ¶ 20.)  As noted

8   above, the court has received no objections to the settlement nor have any class or collective

9   members sought to opt out of the settlement.  Finally, even though the court has expressed some

10  concern that plaintiff's valuations are not strongly supported, there is no evidence that plaintiff's

11  valuations are inaccurate.  Overall, based on the information presented to it, the court concludes

12  that the amount offered in settlement of this action does not appear to be unreasonable.

13       4.      Extent of Discovery Completed and Stage of Proceedings

14       The court next considers whether the process by which the parties arrived at their

15  settlement is truly the product of arm's length bargaining, rather than collusion or fraud.  *Millan*

16  *v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).  A settlement is presumed

17  fair if it "follow[s] sufficient discovery and genuine arms-length negotiation."  *Adoma v. Univ. of*

18  *Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v.*

19  *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

20       Over the course of three years, counsel has investigated the merits and legal basis of

21  plaintiff's claims through form interrogatories, special interrogatories, requests for production of

22  document productions, and depositions of defendant's person most knowledgeable designee on

23  various topics.  (Doc. No. 21 at 7.)  Plaintiff's papers and time entries support the conclusion that

24  discovery was conducted over roughly a two–month time period in 2018, then the parties

25  participated in a mediation session in February 2019.  (Doc. No. 21 at 7–8.)  Once the parties

26  agreed to pursue mediation, they informally exchanged additional information, and defendant

27  provided plaintiff access to timecard data.  (Doc. No. 25-2 at 4.)  At the mediation, the parties

28  /////

10

agreed to add a FLSA claim, remove the case to federal court, and settle the action before this court.

The documentation submitted in support of the motion for final settlement approval raised initial concerns regarding the amount of discovery conducted with respect to plaintiff's FLSA claim, because the briefing suggested that no additional discovery was conducted after mediation, and plaintiff instead chose merely to rely on information provided by defendant with respect to the new FLSA claim.  (Doc. No. 22 at 7, 13–15.)  The court gave the parties an opportunity to address this issue, and in the supplemental briefing, class counsel confirmed that while no additional discovery was conducted with respect to the FLSA claim, the information needed to evaluate that claim had already been provided by the defendants. (Doc. Nos. 25 at 3–4; 25-2 at 3–12.)  Class counsel also satisfactorily outlined the steps taken to reach the estimate provided to the court with respect to the value of the FLSA claim.  (Doc. No. 25-2 at 5–6.)

     5.     <u>Experience and Views of Counsel</u>

Class counsel has submitted a declaration concerning Attorney Edwin Aiwazian's experience in which it is explained that he has approximately 16 years of experience as a civil litigator, focusing on consumer and employment class actions, and that his firm, Lawyers *for* Justice, PC, has litigated dozens of cases in federal and state courts in California as class counsel and recovered millions of dollars on behalf of their clients. (Doc. No. 21-2 at ¶¶ 13–18.) Attorney Aiwazian graduated from Pepperdine University School of Law in 2004.  (*Id.* at ¶ 30.) He began his legal career at Girardi & Keese, working primarily on class actions and other complex civil cases.  (*Id.* at ¶ 16.)  Since the founding of his firm in approximately October 2008, he has almost exclusively focused on the prosecution of consumer and employment class actions, involving wage-and-hour claims, race discrimination, unfair business practices or consumer fraud.  (*Id*.)  The court finds that the view of class counsel that the proposed settlement is fair and reasonable weighs in favor of granting final approval.

     6.     <u>Presence of a Governmental Participant</u>

The settlement agreement contemplates payment of $56,250 of the settlement amount to the California Labor and Workforce Development Agency under PAGA.  (Doc. Nos. 10, Ex. 1

¶ 39.2.)  This too weighs in favor of approval of the settlement.  *See Adoma v. Univ. of Phx. Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13-cv-2679-CAB-BGS, 2014 WL 9872803, at *10 (S.D. Cal. Dec. 23, 2014) (factoring civil PAGA penalties in favor of settlement approval).

    7. <u>Reaction of the Class Members</u>

  The absence of objections to a proposed class action settlement supports the conclusion that the settlement is fair, reasonable, and adequate.  *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way, Inc.*, No. 07-cv-938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

  According to the declaration of Kevin Lee, Case Manager at Phoenix, the settlement administrator in this case, no member of the class has filed an objection to the settlement pending before the court for final approval.  (Doc. No. 22-2 at ¶ 11.)  Moreover, no class members raised any objections to the settlement at the final fairness hearing.  Accordingly, consideration of this factor weighs significantly in favor of granting final approval.

    8. <u>Subtle Signs of Collusion</u>

  When a class action settlement agreement is reached prior to a class being certified by the court, "consideration of these eight *Churchill* factors alone is not enough . . .."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946–47.  District courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *Id.* at 947.  These more subtle signs include:  (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," and therefore carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *Id.* (internal

1    quotations and citations omitted).  The Ninth Circuit has also recognized that a version of a "clear

2    sailing" arrangement exists when a defendant expressly agrees not to oppose an award of

3    attorneys' fees up to an agreed upon amount.  *Lane*, 696 F.3d at 832; *In re Bluetooth*, 654 F.3d at

4    947; *In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig.*,

5    295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the

6    party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so

7    long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa*

8    *Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

9         While this court has wide latitude to determine whether a settlement is substantively fair,

10   it is held to a higher procedural standard and "must show it has explored comprehensively all

11   factors . . .."  *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v.*

12   *Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).  Thus, while the court should examine any

13   relevant *Churchill* factors, the failure to review a pre-class certification settlement for those subtle

14   signs of collusion identified above may constitute error.  *Id.* at 1224–25.

15        First, the settlement in this case includes a version of a "clear sailing" arrangement, in

16   which defendant agreed "not to oppose or impede any application or motion by Class Counsel for

17   attorneys' fees of not more than One Million Three Hundred Twelve Thousand Five Hundred

18   Dollars and zero cents ($1,312,500.00) (which is thirty-five percent (35%) of the Total Settlement

19   Fund), plus the reimbursement of costs and expenses associated with Class Counsel's litigation

20   and settlement of the Action, not to exceed $55,000."  (Doc. No. 10 at 29.)  Although the "very

21   existence of a clear sailing provision increases the likelihood that class counsel will have

22   bargained away something of value to the class," *In re Bluetooth*, 654 F.3d at 948 (citation

23   omitted), the existence of a clear sailing provision is not necessarily fatal to final approval.

24   Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to

25   peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit

26   to the class."  *Id.* (citing *Staton*, 327 F.3d at 954).  Here, plaintiff argues that the absence of any

27   objections speaks to the fairness of the requested attorneys' fees award because the class notice

28   /////

13

1  informed class members that class counsel would seek an award of up to 35% of the gross

2  settlement amount (Doc. No. 25 at 7.)

3      Second, the parties in this case did not arrange for any unawarded amount of fees to revert

4  to defendants.  Rather, under the settlement any residue will be distributed *cy pres* to the

5  designated beneficiary, California Rural Legal Assistance, Inc.  (Doc. No. 22 at 9.)

6      Third, the court does not find that class counsel is seeking a disproportionate distribution

7  of the settlement.  It is true that the award of attorneys' fees sought here—35% of the settlement

8  fund—is above the benchmark of 25% for reasonable fee awards in the Ninth Circuit.  *See*

9  *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *12 (E.D. Cal. Nov.

10  10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3%

11  of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*,

12  229 F.3d 1249, 1256 (9th Cir. 2000)); *In re Bluetooth*, 654 F.3d at 947 (setting a 25 percent

13  benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers v. Ariz. Citrus Growers*,

14  904 F.2d 1301, 1311 (9th Cir. 1990) (same).  The weighing of this factor was a principle concern

15  for the court after the mediator non-disclosure issue came to light.  However, plaintiff's

16  supplemental declaration of attorney Ed Aiwazian addresses the court's concerns by explaining

17  that plaintiff's counsel were aware that the mediator had a relationship with defendant's counsel.

18  (Doc. No. 25-2 at 3.)  The court is now satisfied that the parties acted in good faith in reaching

19  this settlement.  The court is therefore also satisfied that the settlement is not the product of

20  collusion.

21      In sum, the more subtle signs of collusion that the Ninth Circuit has warned of are not

22  sufficiently present here to warrant the rejecting of the proposed settlement.[5]  Accordingly, the

23  court concludes that the settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).

24  **FINAL APPROVAL OF FLSA COLLECTIVE SETTLEMENT**

25      The first amended complaint in this action also contains claims brought under the FLSA.

26  Settlement of claims under the FLSA also requires court approval.  *See Jones v. Agilysys, Inc.*,

27

28  _____
[5]  Nonetheless, some of the concerns previously expressed by the court will be considered in addressing the attorneys' fees to be awarded as part of this settlement.

No. 12-cv-03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014); *Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Rest.*, No. 05-cv-0279-PVT, 2007 WL 2298046, at *1, n.1 (N.D. Cal. Aug. 8, 2007). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).

As detailed in the order granting preliminary approval of the settlement, the Ninth Circuit has not yet established consistent criteria for district courts to evaluate whether an FLSA settlement should be approved. *See Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-cv-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). In this circuit, district courts look to whether the settlement is a fair and reasonable resolution of a *bona fide* dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1. "A *bona fide* dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiff to the compensation they seek, because to do so would shield employers from the full cost of complying with the statute. *Id.*

Once it is established that there is a *bona fide* dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. 09-cv-2214-KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). Having found this settlement to be fair and reasonable under Rule 23, the court therefore looks only to whether there is a *bona fide* dispute regarding the existence and extent of defendant's FLSA liability. (Doc. No. 14 at 11–12.)

Plaintiff asserts there is a *bona fide* dispute because defendant disputes liability. (Doc. No. 14-1 at ¶¶ 23–29). Plaintiff's originally-submitted time records contained no entries related to FLSA investigation or discovery, and the only mention therein of the FLSA was in relation to the

15

1    preliminary approval motion.  (Doc. No. 21-2 at 21.)  As discussed above, the court asked for

2    additional briefing addressing this issue to ensure that plaintiffs had conducted adequate

3    discovery to support their FLSA claim valuation and that the collective was not short-changed in

4    the determination of what was owed to them.  (Doc. No. 25 at 5.)[6]  In the supplemental briefing,

5    counsel for plaintiff has described the steps they took to reach the estimated value of the FLSA

6    claim.  (Doc. No. 25-2 at 5–6.)  Based upon the information provided, the court now concludes

7    there was a *bona fide* dispute as to FLSA liability and will approve the parties' FLSA settlement.

8                      **ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS**

9    **A.       Attorney's Fees**

10           This court has an "independent obligation to ensure that the award [of attorneys' fees],

11   like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In*

12   *re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941.  This is because, when fees are to be

13   paid from a common fund, the relationship between the class members and class counsel "turns

14   adversarial."  *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In*

15   *re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As such, the

16   district court assumes a fiduciary role for the class members in evaluating a request for an award

17   of attorneys' fees from the common fund.  *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v.*

18   *Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

19           The Ninth Circuit has approved two methods for determining attorneys' fees in such cases

20   where the attorneys' fee award is taken from the common fund set aside for the entire settlement:

21   the "percentage of the fund" method and the "lodestar" method.  *Vizcaino v. Microsoft Corp.*, 290

22   F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in

23   common fund cases to choose either method.  *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No.

24   14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016).  Under either

25   _____

26   [6]  At the hearing on the motion for final approval counsel for plaintiff clarified that defense
     counsel had provided them in discovery all the necessary data to make their calculations as to the
27   potential value of the FLSA claim at the parties' mediation session.  Plaintiff's counsel also
     explained that based upon that data they were able to make the necessary calculations to value the
28   FLSA claims for overtime and minimum wages.

1   approach, "[r]easonableness is the goal, and mechanical or formulaic application of method,

2   where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life*

3   *Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).  As noted above, the Ninth Circuit

4   has generally set a 25 percent benchmark for the award of attorneys' fees in common fund cases.

5   *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the

6   fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record

7   of any 'special circumstances' justifying a departure.").

8          Reasons to vary the benchmark award may be found when counsel achieves exceptional

9   results for the class, undertakes "extremely risky" litigation, generates benefits for the class

10  beyond simply the cash settlement fund, or handles the case on a contingency basis.  *Vizcaino*,

11  290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55.  Ultimately,

12  however, "[s]election of the benchmark or any other rate must be supported by findings that take

13  into account all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.  The Ninth Circuit

14  has approved the use of lodestar cross-checks as a way of determining the reasonableness of a

15  particular percentage recovery of a common fund.  *Id.* at 1050 ("Where such investment is

16  minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a

17  lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a

18  higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779

19  F.3d at 955.

20         Here, the parties' settlement provides that class counsel will seek an award of 35% of the

21  Gross Settlement Fund, equivalent to $1,312,500.00. (Doc. No. 21 at 13.)  The court approved

22  plaintiff's request for attorneys' fees on a preliminary basis (Doc. No. 19 at 26), finding that the

23  requested fee amount was reasonable even though it was a somewhat higher percentage of the

24  settlement amount than the 25% benchmark rate in the Ninth Circuit, but was not an uncommon

25  percentage for wage-and-hour class actions in the Eastern District of California.  *See Barbosa v.*

26  *Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (listing cases where courts

27  approved attorneys' fees of approximately one-third of the total settlement).  The court also

28  advised that it would make a final determination regarding the reasonableness of the requested

1   attorneys' fee amount by carefully performing a lodestar cross-check at the final approval stage.

2   (Doc. No. 19 at 26.)  Class counsel contend that a fee award of thirty-five percent of the common

3   fund is reasonable here for several reasons.

4           First, plaintiff's counsel advances the entirely unpersuasive argument that it would not be

5   fair to plaintiff Castro if the class percentage of recovery was less than 35% because, she has

6   signed a contingency agreement, agreeing to pay "at least 35%" of her recovery to counsel.  (Doc.

7   No. 21-2 at ¶ 10.)  The court emphasizes, however, when payment is distributed on a class basis,

8   a named plaintiff's individual recovery is treated just like that of all class members: the named

9   plaintiff's percentage of the recovery to be paid to class counsel is set by the court. Fed. R. Civ.

10  P. 23(h).  The amount awarded to counsel on behalf of the class already includes her payment to

11  class counsel for work obtaining plaintiff Castro's recovery since her recovery is her portion of

12  the settlement that remains after attorney fees and costs are taxed.   Plaintiff Castro should not be

13  charged a second time to pay her counsel after she receives her individual recovery.  *See* Cal.

14  Rules of Prof. Conduct, Rule 1.5 Fees for Legal Services.

15          Class counsel also argues that attorneys' fees above the 25% benchmark is warranted here

16  because there was no certainty of success and class counsel believes that they achieved an

17  excellent result for the class and collective action members.  (*Id.* at 16–17.)  In their motion for

18  final approval of attorneys' fees, class counsel also cites to cases in which courts have awarded

19  fees equal to one-third of the common fund to Lawyers *for* Justice.  (Doc. No. 22 at 14–21.)

20  Finally, class counsel argues that this matter was "highly contested" and required an extensive

21  amount of time and labor on their part.  (*Id.* at 16.)

22          Simply put, the court does not find in this case that an award this far above the benchmark

23  is justified due to plaintiff counsel's repeated and clear failures to support their valuation

24  estimates in the briefing submitted, despite the court providing them multiple opportunities to do

25  so, and the generally poor explanation given by them in support of the total valuations.  The court

26  notes that this action involved no motion practice, other than the motions for approval which were

27  not opposed. This case resolved after a very limited period of discovery and a successful

28  mediation.  While the court commends the parties for reaching a speedy resolution of this action,

18

1    plaintiff's counsel has not made a showing that their efforts in this specific case merit such a large

2    portion of the total settlement.

3          The court next turns to the lodestar calculation in order to cross-check the reasonableness

4    of the requested attorneys' fee award.  Where a lodestar is merely being used as a cross-check, the

5    court "may use a 'rough calculation of the lodestar.'"  *Bond v. Ferguson Enters., Inc.*, No. 1:09-

6    cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v.*

7    *Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM-SHx, 2008 WL 8150856 (C.D. Cal. July

8    21, 2008)).  Moreover, beyond simply the multiplication of a reasonable hourly rate by the

9    number of hours worked, a lodestar multiplier can be applied.  "Multipliers in the 3–4 range are

10   common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl.*

11   *Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*,

12   118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (stating

13   courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even

14   higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re*

15   *Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)

16   ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the

17   lodestar method is applied.") (quoting 4 Newberg on Class Actions § 14.7).

18         Here, class counsel assert that 930.8 hours were expended in litigating this case, and

19   estimate that a total of approximately 937.95 attorney related hours will be expended by the time

20   this case is fully resolved.  (Doc. Nos. 21-2 at 17–27; 25-2 at 13.)  Plaintiff's counsel originally

21   submitted declarations representing that the total number of hours spent by their law firm on this

22   case and their blended hourly rates.  (*See* Doc. No. 21-2.)  In calculating their lodestar, class

23   counsel asked the court to use a blended hourly rate of at least $785. (*Id.* at ¶12.)  However,

24   counsel's declaration did not provide sufficient support for counsel's lodestar figure because it

25   did not note the attorney performing each task and, moreover, a rate of $785 is well above the

26   rates that have typically been employed by judges in this district for even the most experienced

27   litigators.  (*See* Doc. No. 19 at 26) (order granting preliminary approval indicating that the court

28   would scrutinize the requested amount and "carefully re-examine the award of attorneys' fees and

1    conduct a final lodestar cross-check" in connection with final approval).   Accordingly, the court

2    requested supplemental briefing in this regard as well.

3         In the supplemental briefing, class counsel attempts to provide more detail regarding the

4    lodestar calculation:  noting the name of each attorney who contributed work to the case, the year

5    they were admitted to the bar, the total number of hours each spent working on the case, and an

6    hourly rate "commensurate with the individual background, training, and experience of the

7    attorney." (Doc. No. 25-2 at 13.)  Counsel seek hourly rates ranging from $500–$675 for

8    associates, $775 for a senior associate, and $850–$975 for partners.  All of the hourly rates sought

9    by class counsel here are higher than the rates previously accepted by the undersigned as

10   reasonable even for lodestar cross-check purposes.  *See, e.g.*, *Emmons v. Quest Diagnostics*

11   *Clinical Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27,

12   2017) (adopting as reasonable rates between $370 and $495 for associates and $545 and $695 for

13   senior counsel and partners).  The undersigned has previously accepted as reasonable for lodestar

14   purposes hourly rates of between $370 and $495 for associates, and $545 and $695 for senior

15   counsel and partners.  (*Id.*)[7]

16        While class counsel calculates their lodestar as $736,290.75, it is based on their high

17   proposed blended $785 hourly rate.  (Doc. No. 21 at 22).  The court will adjust these rates

18   downward.  If instead the court calculates a lodestar based on previously accepted hourly rates

19   and applies a modest multiplier, the lodestar cross-check in this case does not support the

20   requested award of $1,312,500.00 in attorneys' fees, an amount equal to 35% of the total fund in

21   this case.

22        Given the foregoing, the court determines that the lodestar amount for cross-check

23   purposes is $529,872.25.[8]  To reach the amount of $1,312,500 in fees that class counsel has

24   _____

25   [7]  Since this hourly rate will be used solely for the purpose of cross-checking the percentage of
     the common fund awarded as attorneys' fees in this case, the court need not address or determine

26   the precise appropriate hourly rates in this district.

27   [8]  The court calculated the lodestar as follows.  Partner Edwin Aiwazian, who has more than
     sixteen years of experience, reports 311.30 hours of time billed to this action.  If the court applies

28   a rate of $750, one of the highest rates it has ever employed, his portion of the total lodestar is

                                        20

1    requested here, a multiplier of approximately 2.48 would have to be applied to the lodestar that

2    itself was calculated by employing some of the highest approved rates in this district.  While such

3    a multiplier may be perfectly appropriate in other matters, here, the court finds that such an

4    attorneys' fee award is not justified in this case.  The court instead finds that a fee award of 27.5%

5    of the Gross Settlement is fair and reasonable, which results in a total award of $1,031,250 in

6    attorneys' fees to class counsel.

7    **B.**      **Costs and Expenses of Class and Collective Counsel**

8            Additionally, class counsel seeks to recover the costs and expenses advanced while

9    prosecuting this litigation.  Such awards "should be limited to typical out-of-pocket expenses that

10   are charged to a fee-paying client and should be reasonable and necessary."  *In re Immune*

11   *Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  These can include

12   reimbursements for:  "(1) meals, hotels, and transportation; (2) photocopies; (3) postage,

13   telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research;

14   (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees."  *Id.*

15          Here, class counsel requests reimbursement of costs and expenses in the amount of

16   $24,659.23.  (Doc. No. 21-2 at 18.)  The court has reviewed class counsel's declaration and finds

17   all the charges incurred to be reasonable.  Accordingly, the court will approve the reimbursement

18   of costs and expenses in the amount requested.

19   **C.**      **Service Award**

20          Courts frequently approve "service" or "incentive" awards in class action cases.

21   *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  Generally speaking,

22   incentive awards are meant to recognize the effort of class representatives "for work done on

23   _____

24   $216,353.50.  For partner Arby Aiwazian and senior associate Joanna Ghosh, who each have
     more than ten years of experience, if the court were to apply a $625 per hour rate for their time,

25   again one of the highest rates employed by the undersigned, to the 193.5 hours and 87.55 hours,
     respectively, of attorney work reported, their total lodestar is $175,656.25.  For the two associates

26   who each have more than eight years of experience, if the court applies a rate of $495, the highest
     rate it has employed for associates, to the 2.5 hours and 23 hours reported respectively, their total

27   lodestar is $12,622.50.  For the remaining associates, who each have between three and six years
     of experience, if the court were to apply a rate of $400 to their 313.10 total hours reported, their

28   total lodestar is $125,240.00.

                                                21

1    behalf of the class, to make up for financial or reputational risk undertaken in bringing the action,

2    and, sometimes, to recognize their willingness to act as a private attorney general." *Id*.  The

3    district court evaluates each award individually, using "relevant factors includ[ing] the actions the

4    plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted

5    from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the

6    litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting

7    *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

8        The courts of the Ninth Circuit typically find an award of $5,000 to be "presumptively

9    reasonable." *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000)

10   (endorsing $5,0000 service awards to named representatives); *Bellinghausen v. Tractor Supply

11   Co.*, 306 F.R.D. 245, 246 (N.D. Cal. 2015) (collecting cases); *In re Toys R Us-Del., Inc. FACTA

12   Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014) (awarding plaintiffs $5,000 each "consistent with

13   the amounts courts typically award as incentive payments").  Higher amounts can be appropriate,

14   such as in employment actions, where a plaintiff risks retaliation or blacklisting by bringing suit

15   against her employer.  *See, e.g.*, *Buccellato v. AT&T Operations, Inc.,* No. C10-00463-LHK,

16   2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011).

17       Here, plaintiff Castro seeks an incentive award of $15,000 for her service in this action.

18   (Doc. No. 21-2 at 14.)  Plaintiff Castro declares that she spent more than 70 hours over the past

19   approximately three years collecting and reviewing records, assisting counsel with understanding

20   the duties of non-exempt employees working for defendant, and reviewing the settlement.  (Doc.

21   Nos. 21-3 at 2–3; 25-1 at 3–4.)  Class counsel notes plaintiff has expended significant time and

22   effort in prosecuting this case on behalf of the class and the collective action.  (Doc. No. 21-2 at

23   14–15.)  In the order granting preliminary approval, the court had requested additional support for

24   the requested incentive award, since scant evidence had been presented detailing plaintiff Castro's

25   contributions to this case that would justify the requested $15,000 award.  (Doc. No. 19 at 28.)  At

26   the final fairness hearing, the court again indicated that more support was needed to justify an

27   award so far above the benchmark.  Plaintiff Castro thereafter submitted an additional declaration

28   (Doc. No. 25-2), which provides a bit more detail regarding her contributions to this litigation, but

1  she and her counsel have failed to provide persuasive reasons justifying the full requested

2  $15,000 incentive award, which is outside the normal range of such awards.

3          Accordingly, the court instead finds a service of $10,000 for plaintiff Castro is fair and

4  reasonable and will authorize the award of this amount.

5  **D.      Settlement Administrator Costs**

6          The court previously approved the appointment of Phoenix Class Action Administration

7  Solutions as the settlement administrator.  (Doc. No. 19 at 31.)  The total cost for administration

8  of this settlement, including fees incurred and future costs for completion is $13,000.  (Doc. No.

9  22-2 at ¶ 14.)  The court finds these administration costs reasonable and will direct payment in the

10  requested amount.

11                                  **CONCLUSION**

12          For the reasons stated above:

13      1.      Plaintiff's unopposed motion for final approval of the class action settlement (Doc.

14              No. 22) is granted and the court approves the settlement as fair, reasonable, and

15              adequate;

16      2.      Plaintiff's unopposed motion for attorneys' fees and costs and incentive awards

17              (Doc. No. 21) is granted in part, and the court awards the following sums:

18              a.      Class counsel shall receive $1,031,250 in attorneys' fees and $24,659.23 in

19                      expenses;

20              b.      Plaintiff Castro shall receive $10,000.00 as service award; and

21              c.      Phoenix Class Action Administration Solutions shall receive $13,000.00 in

22                      settlement administration costs and expenses;

23      3.      The parties are directed to effectuate all terms of the settlement agreement and any

24              deadlines or procedures for distribution set forth therein;

25  /////

26  /////

27  /////

28  /////

4.      This action is dismissed with prejudice in accordance with the terms of the parties' settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

5.      The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **May 20, 2021**

_____
UNITED STATES DISTRICT JUDGE

24